## PEOPLE *v.* WEAVER.

1. The provision in sect. 5219 of the Revised Statutes of the United States, that State taxation on the shares of any national banking association shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of the State, has reference to the entire process of assessment, and includes the valuation of the shares as well as the rate of percentage charged thereon.
2. The statute of a State, therefore, which establishes a mode of assessment by which such shares are valued higher in proportion to their real value than other moneyed capital, is in conflict with that section, although no greater percentage is levied on such valuation than on that of other moneyed capital.
3. The statutes of New York which permit a party to deduct his just debts from the valuation of all his personal property, except so much thereof as consists of such shares, tax them at a greater rate than other moneyed capital, and are, therefore, void as to them.

ERROR to the Court of Appeals of the State of New York.

The facts are stated in the opinion of the court.

*Mr. George F. Edmunds* and *Mr. Matthew Hale* for the plaintiff in error.

*Mr. R. W. Peckham, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The law of the State of New York for taxation in the county of Albany, enacted in the year 1850, contained the following section : —

"SECT. 9. If any person shall, at any time before the assessors shall have completed their assessments, make affidavit that the value of his real estate does not exceed a certain sum, to be specified in such affidavit, or that the value of the personal estate owned by him, after deducting his just debts, and his property invested in the stock of any corporation or association liable to be taxed therefor, does not exceed a certain sum, to be specified in the affidavit, it shall be the duty of the board of assessors to value such real or personal estate, or both, as the case may be, at the sum specified in such affidavit, and no more."

In the year 1866, the legislature of that State enacted on this subject another law, the first section of which reads as follows : —

"SECT. 1. No tax shall hereafter be assessed upon the capital of any bank or banking association organized under the authority of this State or of the United States ; but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein : said shares shall be included in the valuation of the personal property of such stockholder in the assessment of taxes at the place, town, or ward where such bank or banking association is located, and not elsewhere, whether the said stockholder reside in said place, town, or ward or not, but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this State. And, in making such assessment, there shall also be deducted from the value of such shares such sum as is in the same proportion to such value as is the assessed value of the real estate of the bank or banking association, and in which any portion of their capital is invested, in which said shares are held, to the whole amount of the capital stock of said bank or banking association. *And provided further*, that nothing herein contained shall be held or construed to exempt from taxation the real estate held or owned by any such bank or banking association ; but the same shall be subject to State, county, municipal, and other taxation to the same extent and rate and in the same manner as other real estate is taxed."

William J. Weaver, Edward Brennan, and Robert H. Weir, the defendants in error, constituting the board of assessors of the city of Albany for the year 1875, assessed against Chauncey P. Williams, the relator, the sum of $38,250, for taxation on account of shares owned by him in the National Albany Exchange Bank, organized under the general banking act of Congress. He appeared before this board in due time, and demanded the reduction of this sum to the amount of one dollar, and accompanied the demand with this affidavit : —

"CITY AND COUNTY OF ALBANY, *ss.* :

"I, Chauncey P. Williams, being duly sworn, do depose and say that the value of personal estate owned by me, including my bank stock. after deducting my just debts and my property invested in the

stock of corporations or associations liable to be taxed therefor, and my investments in the obligations of the United States, does not exceed the sum of one dollar.

"C. P. WILLIAMS.

"Subscribed and sworn before me, this twenty-eighth day of September, 1875.

"JAMES MAHER, *Notary Public.*"

The defendants refused to make this deduction; and, under the procedure in the courts of New York, which allows of an amicable suit on an agreed statement of facts, the case finally came to the Court of Appeals of that State. The judgment there being in favor of defendants, the People of the State of New York, on the relation of Williams, bring the record to this court by writ of error. Three questions were raised and decided in the Supreme Court, and its judgment was affirmed in the Court of Appeals. They are thus stated in the record: —

"The case coming on for argument on the submission thereof, after hearing Mr. Hale, of counsel for relator, and Mr. Peckham, of counsel for defendants, the court decides: —

"1st, That it was not the duty of the defendants, as assessors of the city of Albany, to comply with the demand made by said relator, and reduce his assessments to the sum of one dollar, and answer the first question submitted in the negative.

"2d, That, under the law of the State of New York, referred to in the second question, and passed April 23, 1866, the defendants, as such assessors, were justified in refusing to reduce the relator's assessment on his shares of bank stock mentioned in said submission to the sum of one dollar, and answers the second question in the affirmative.

"3d, That the said law of the State of New York, passed April 23, 1866, is not in violation of any law of the United States relating to the amount of taxes on shares of national banking associations, and answers the third question submitted in the negative.

"Judgment is therefore ordered for the defendants against the relator, with costs."

Of the second of these propositions this court has no jurisdiction, but must accept the decision of the highest court of the

State, that the act of 1866 took the money invested in bank shares out of the general provision of the law of 1850, which allowed a deduction of the debts owing by the shareholder from the value of the personal property as a basis for laying the tax. In that respect, we are bound by the decision of the Court of Appeals as the true construction of the State statute. The first proposition is but the necessary result of the case, if the other two are decided in favor of defendants by that court. We have thus left for our consideration the third proposition, which, being decided against a right asserted by plaintiff under the act of Congress establishing the national banking system, presents a question reviewable by this court. We proceed to consider it.

The Court of Appeals delivered no formal opinion in the present case; but, in the entry of their judgment, which is part of the record, they say, " This judgment is upon the authority of the former decision of this court, rendered in the case of *The People* v. *Dolan and Others*, 36 N. Y. 59."

The opinion in that case is before us. It decides directly the question now presented, and, if sound, justifies the judgment of the court in this case. We have given it the careful consideration which the high character of the court demands at our hands. The question arises on the provision of the national bank law concerning taxation of the shares of the banks, which is thus expressed in sect. 5219 of the Revised Statutes, in force at the time of this assessment : —

"Nothing herein shall prevent all the shares in any association from being included in the valuation of personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located, . . . subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other money capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere."

It cannot be disputed, — it is not disputed here, — nor is it denied in the opinion of the State court, that the effect of the State law is to permit a citizen of New York, who has money

capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stocks can make no such deduction. Nor, inasmuch as nearly all the banks in that State and in all others are national banks, can it be denied that the owner of such shares who owes debts is subjected to a heavier tax on account of those shares than the owner of moneyed capital otherwise invested, who also is in debt, because the latter can diminish the amount of his tax by the amount of his indebtedness, while the former cannot. That this works a discrimination against the national bank shares as subjects of taxation, unfavorable to the owners of such shares, is also free from doubt. The question we are called to decide is, whether Congress, in passing the act which subjected these shares to taxation by the State, intended, by the very clause which was designed to prevent discrimination between national bank shares and other moneyed capital, to authorize such a result.

That the provision which we have cited was necessary to authorize the States to impose any tax whatever on these bank shares, is abundantly established by the cases of *McCulloch* v. *The State of Maryland*, 4 Wheat. 316 ; *Osborn* v. *Bank of the United States*, 9 id. 738 ; *Weston* v. *The City Council of Charleston*, 2 Pet. 449.

As Congress was conferring a power on the States which they would not otherwise have had, to tax these shares, it undertook to impose a restriction on the exercise of that power, manifestly designed to prevent taxation which should discriminate against this class of property as compared with other moneyed capital. In permitting the States to tax these shares, it was foreseen — the cases we have cited from our former decisions showed too clearly — that the State authorities might be disposed to tax the capital invested in these banks oppressively.

This might have been prevented by fixing a precise limit in amount. But Congress, with due regard to the dignity of the States, and with a desire to interfere only so far as was necessary to protect the banks from any thing beyond their equal share of the public burdens, said, you may tax the real estate

of the banks as other real estate is taxed, and you may tax the shares of the bank as the personal property of the owner to the same extent you tax other moneyed capital invested in your State. It was conceived that by this qualification of the power of taxation equality would be secured and injustice prevented.

That such was the intent of Congress can admit of no doubt. Have they given expression to that intent so that courts can see and enforce it, or have they expressed themselves so unfortunately that the States may, by a narrow interpretation of the act of Congress and by skilfully framed statutes of their own, exercise the power thus granted so as not only to reap its full benefit, but at the same time cause the burden of supporting the State government to fall with unequal weight on the subject of taxation thus surrendered to it by the national government?

The argument by which this view is supported is founded on the assumption that while Congress limited the State authorities in reference to the ratio or percentage levied on the value of these shares, which could not be greater than on other moneyed capital invested in the State, it left the matter of the relative valuation of the shares and of other moneyed capital wholly to the control of State regulation. The State can, therefore, adopt any arbitrary or conventional system of valuation as a basis of taxation, however unequally or unjustly it may operate and however it may discriminate against bank shares, provided the percentage of the tax levied in this valuation is the same in all cases. If, for instance, the tax is two per cent on all personal property, the argument is, that the act of Congress is not violated if the valuation on the money of the citizen invested in State bonds is, by statute, one-half its real value, and that on bank shares is its full value, or, as in the statute of the State now under consideration, the taxpayer is allowed an exemption from taxation in whole or in part, as regards his State bonds, while none is allowed in reference to bank shares.

"Taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individuals." Seizing upon the word " rate " in this sentence as if disconnected

from the word "assessment," and construing it to mean percentage *on any* valuation that might be made, the Court of Appeals arrive at the conclusion that, since that percentage is the same in all cases, the act of Congress is not infringed. If this philological criticism were perfectly just, we still think the manifest purpose of Congress in passing this law should prevail. We have already shown what that was. But the criticism is not sound. The section to be construed begins by declaring that these shares may be "included in the valuation of the personal property of the owner, in assessing taxes imposed by authority of the State within which the association is located." This *valuation,* then, is part of the *assessment* of taxes. It is a necessary part of every assessment of taxes which is governed by a ratio or percentage. There can be no rate or percentage without a valuation. This taxation, says the act, shall not be at a greater rate than is assessed on other moneyed capital. What is it that shall not be greater? The answer is, taxation. In what respect shall it be not greater than *the rate assessed* upon other capital? We see that Congress had in its mind an *assessment,* a *rate* of assessment, and a *valuation;* and, taking all these together, the taxation on these shares was not to be greater than on other moneyed capital.

"When taxes have been properly decided upon, an assessment may become an indispensable proceeding in the establishment of any individual charge, against either person or property. This is always requisite when the taxes are to be levied in proportion to an estimate either of values, of benefits, or the results of business." "An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes *listing* the persons, property, &c., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them. . . . Taxation by valuation cannot be apportioned without it." Cooley, Taxation, 258, 259; Burroughs, Taxation, p. 198, sect. 94. So, also, Judge Bouvier defines assessment to be determining the value of a man's property or occupation for the purpose of levying a tax.

*Determining the share of a tax to be paid by each individual.*
Levying a tax. 1 Bouvier, 154. These definitions show that
in the best use of the language employed by Congress we are
justified in looking to the rule of valuation adopted by the State
in assessing taxes on these shares, as well as to the uniformity
of percentage to ascertain whether the congressional restriction
has been violated.

It is said, however, that the judgment of the State court is
supported by the decision of this court in *People* v. *The Commis-
sioners*, 4 Wall. 244. The specific question now before us was
not involved in that case. The only matter before the court
was whether the holder of the bank shares was entitled to de-
duct from their value a due proportion of the sum which the
bank had invested in government bonds. This was decided in
the negative, and it is all that was decided, or could be decided.
The sentence in Mr. Justice Nelson's opinion, on which the
argument is founded, reads thus : " The answer is, that, upon
a true construction of this clause of the act, the meaning and
intent of the law makers were that the rate of taxation of the
shares should be the same, or not greater, than upon the mon-
eyed capital of the individual citizen which is subject or liable
to taxation. That is, no greater proportion or percentage of
tax in the valuation of the shares should be levied than upon
other moneyed taxable capital in the hands of the citizens."

If we give to the phrase " rate of taxation " in this sentence
no more than its proper force, and if we observe that the
learned judge speaks of the proportion or percentage *in* the
valuation, not *on* it, as it is misquoted, we have the idea which
we have already supposed to be the true one in the minds of
the law makers. However this may be, we feel quite sure that
the question of limiting the effect of the act of Congress to a
discrimination in the percentage levied as a tax, without re-
gard to equality in the valuation on which that tax was levied,
was not before the court, and was not intended to be decided.
And in our view such a proposition is untenable.

We are, therefore, of opinion that the statute of New York,
as construed by the Court of Appeals, in refusing to plaintiff
the same deduction for debts due by him, from the valuation
of his shares of national bank stock, that it allows to those

who have moneyed capital otherwise invested, is in conflict with the act of Congress, and the judgment of that court will be reversed and the case remanded for further proceedings in conformity to this opinion.

*So ordered.*