[No. 7,730.—In Bank.]

## NANCY MILLER v. A. HEILBRON.

TAXATION OF NATIONAL BANK SHARES—CONSTITUTIONAL LAW—SUBMISSION OF CONTROVERSY WITHOUT ACTION.—The plaintiff was owner of certain shares of capital stock of a National Bank upon which a tax for the year 1880 had been assessed, and an agreed case was submitted in the lower Court by her and the defendant, who was Tax Collector (under § 1138, Code Civ. Proc.), in which the question in effect was whether the assessment was valid.

*Held*: The provision of § 3640 of the Political Code, as amended March 22d, 1880 (under which the assessment was made), so far as it applied to National Banks, was in violation of the restriction imposed by § 5219 of the Revised Statutes of the United States, forbidding the taxation of such shares at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the State; and the assessment was therefore void.

APPEAL from a judgment for the plaintiff in the Superior Court, County of Sacramento.

*A. L. Hart,* Attorney-General, *C. L. Jordan* and *H. L. Buckley,* for Appellant.

*Geo. Cadwalader,* for Respondent.

McKINSTRY, J.:

This controversy was submitted upon the following agreed statement:

" Whereas, doubts exist as to the rights of said defendant to collect the State, county, and debris taxes upon shares of stock in the National Gold Bank of D. O. Mills & Co., come therefore, Nancy Miller, who is the owner and holder of four hundred and forty-seven shares of the capital stock of said bank, and said A. Heilbron, who is the Tax Collector of said county, in which said bank is located, and agree upon the facts herein stated, and submit them to the Court, that the rights and duties of the parties hereto may be judicially determined.

" 1. The National Gold Bank of D. O. Mills & Co. is a banking corporation, created pursuant to the laws of the United States, in relation to the creation and organization of National Banks, with a capital stock of three hundred thousand dollars, divided into three thousand shares of one hundred dollars each.

" 2. Jos. W. Houston, the Assessor of said county for the year 1880, assessed said bank, upon its real estate only, at the full cash value of such real estate, said bank claiming that its other property was not subject to taxation, under State authority.

" 3. For the same year, said Assessor assessed the aforesaid four hundred and forty-seven shares of Nancy Miller in manner following, to wit: He first ascertained the aggregate market value of the whole three thousand shares of said bank, and deducted from such aggregate value the value of all property assessed to said bank, to wit: The aforesaid amount at which he had assessed the real estate of said bank. The remainder, after such deduction, was then divided by the aforesaid total number of the shares of said bank, and thus the *pro rata* value of each share was ascertained, after such

deduction as aforesaid.  The plaintiff, Miller, was then as-
sessed for all her said shares at such *pro rata* value.

" 4.  For the same year, said Assessor assessed all the several
banking corporations, and other corporations located in said
county and organized under the laws of California, upon all
their real and personal estate, at the full cash value of said
property.

" 5.  For the same year, said Assessor assessed the shares of
shareholders of said State banks and State corporations in
the same manner as he assessed the said shares of said plaint-
iff Miller, except that in making the deduction mentioned, he
deducted the value of all property assessed to said banks,
being the whole amount of both real and personal estate,
which had been assessed to said State banks and State cor-
porations.

" 6.  That the rate of the aforesaid taxes, for the year 1880,
in said county, was one dollar and thirty-five cents on each
one hundred dollars worth of property.  That said Miller was
assessed in the same year, for real estate in said county, at
the sum of ten thousand dollars, and on miscellaneous per-
sonal property, other than said bank shares, the sum of one
thousand dollars.  The tax on said miscellaneous personal
property was thirteen dollars and fifty cents, and on said real
estate was one hundred and thirty-five dollars.  The tax
on said bank shares was five hundred and twenty-five dollars
and one cent.  On the 23d day of December, 1880, plaintiff
tendered to said Tax Collector the sum of one hundred and
forty-eight dollars and fifty cents, as payment of said taxes
on said real estate and said miscellaneous personal property,
which tender said Tax Collector refused, unless the plaintiff
should also pay the taxes aforesaid, levied on said four hun-
dred and forty-seven shares of stock.  Plaintiff has not since
paid or offered to pay said tax on said shares of stock.

" The matter in controversy is this: Plaintiff claims that
said tax upon her said shares of stock is contrary to law, and
is, therefore, illegal and void; and defendant claims that the
same is lawful, and, therefore, good and valid.  There is no
controversy between them in relation to the validity of the
aforesaid tax upon the real estate and miscellaneous personal
estate of plaintiff, the purpose of this agreement being to ob-

tain a decision as to the validity of the said tax upon said National Bank shares.

"7. That in every instance (during said year 1880) of the assessment of banks doing business in the County of Sacramento, and organized under the laws of the State of California, the value of the property assessed thereto was found to be equal to the value of the capital stock of such bank, and hence no assessment was made against said shares of capital stock, or for the value of the shares therein held by the shareholders.

"8. The foregoing stipulation is made subject to the following objections and exceptions:

"I. Plaintiff objects to the following language in subdivision two of said stipulation, to wit: 'Said bank claiming that its other property was not subject to taxation under State authority,' on the grounds of irrelevancy and immateriality.

"II. Defendant objects to the fourth, fifth, and seventh subdivisions of said stipulation upon the grounds:

"First. That the facts therein stated are irrelevant and immaterial.

"Second. That it is not competent to attack the determination of the Assessor as to the assessable value of said shares of stock in this action, or otherwise than by an appeal to the Board of Equalization.

"Wherefore the parties hereto respectfully pray that the controversy may be judicially determined, and that the Court render such judgment and grant such relief in the premises as is lawful and proper."

It is conceded that the power to levy a tax upon the shares of the National Bank owned by plaintiff is derived from a section of an act of Congress which reads:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed

capital in the hands of individual citizens of · such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed." (Rev. Stats. U. S., § 5219, p. 1015.)

In *People* v. *Weaver*, 100 U. S. 543, the words "other moneyed capital" were construed to mean money capital invested otherwise than in National Banks.

Section 1 of article xiii of the State Constitution provides:

"All property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership; provided, that growing crops, property used exclusively for public schools, and such as may belong to the United States, this State, or to any county or municipal corporation within this State, shall be exempt from taxation. The Legislature may provide, except in the case of credits secured by mortgage or trust deed, for a reduction from credits or debts due to *bona fide* residents of this State."

The Legislature has enacted: "In assessing solvent debts not secured by mortgage or trust deed, a reduction therefrom shall be made of debts due to *bona fide* residents of this State." (Pol. Code, § 3628.)

Section 3640 of the Political Code—as the same stood when plaintiff's shares were assessed—established the mode by which shares of the capital stock of corporations, associations, and joint-stock companies (including National Banks) should be assessed. That section then read:

"Each person, firm, or corporation owning or having in his or its possession any of the shares of the capital stock of any corporation, association, or joint-stock company, shall be assessed therefor. If the corporation, association, or joint-stock company has its principal place of business in this State, the.

assessable value of each share of its stock shall be ascertained by taking from the market value of its entire capital stock the value of all property assessed to it, and dividing the remainder by the entire number of shares into which its capital stock is divided. The owner or holder of capital stock in corporations, associations, and joint-stock companies whose principal place of business is not within the State, must be individually assessed for such stock. Shareholders, in the statement required by § 3629 of this code, shall specify the number of shares of stock held by them, and the name of the corporation. The owner of shares of stock, to be entitled to the reduction provided for in this section, must produce to the Assessor a certificate of the assessment of the property of the corporation, association, or joint-stock company."

In *People* v. *Weaver, supra,* the Supreme Court of the United States held that the restriction in the act of Congress —" the taxation shall not be at a *greater rate* than is assessed upon other moneyed capital," etc.—means something more than that there should be no discrimination with respect to the percentage *on any* valuation which might be made; but that— taking the assessment, rate of assessment, and valuation together—the taxation on shares of National Banks should not be greater than on other moneyed capital.

In making his assessment of plaintiff's shares in the National Bank the Assessor was obliged to pursue the mode prescribed in § 3640 of the Political Code, and could not deduct from their valuation debts due from here to citizens of the State.

" Credits" are declared to be property by the State Constitution. They are property in which other "money capital" is invested than such as is invested in National Bank shares. Yet, as we have seen, the State law, enacted as permitted by § 1 of article xiii of the Constitution, requires the Assessor, in assessing credits, to deduct therefrom all debts due by the party assessed to *bona fide* residents of the State.

Here is clearly a discrimination against the owner of National Bank shares and in favor of the owner of credits. The former is assessed at a greater rate than is the latter.

A section of a statute of New York, relating to taxation, provided that, if any person should make affidavit that the

value of the real estate or personalty owned by him, after deducting his just debts, * * * did not exceed a certain sum, to be specified in the affidavit, it should be the duty of the Board of Assessors to value such real or personal property at such sum and no more.

Another statute, after declaring that no tax should be assessed upon the capital of any bank—State or National—but that the stockholders should be taxed on the value of their shares of stock, provided, " in making such assessment there shall be deducted from the value of such shares such sum as is in the same proportion to such value as is the assessed value of the *real estate* of the bank or banking association in which any portion of their capital is invested, in which said shares are held, to the whole amount of the capital stock of said bank or banking association. And provided further, that nothing herein contained shall be construed to exempt from taxation the real estate held or owned by any such bank or banking association; but the same shall be subject to State, county, municipal, and other taxation to the same extent and in the same manner as other real estate is taxed."

A citizen and resident of New York, who had been assessed upon certain shares of a National Bank, in the manner provided in the law of that State, last above referred to, made affidavit in accordance with the law first mentioned. He demanded of the Board of Assessors that the valuation on his shares should be reduced to one dollar—the sum fixed by his affidavit as the balance of value. The Board of Assessors refused to make the reduction. Out of these facts arose the action, *People* v. *Weaver, supra.* The case went to the Supreme Court of the United States. There, Mr. Justice Miller, speaking for the Court, said : " It can not be disputed—it is not disputed * * * that the effect of the State law is to permit a citizen of New York, who has money capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stocks can make no such deduction."

The foregoing language is applicable to the case before us. So far as the immediate question is concerned, there is but one difference between the law of New York and the law of

this State—a difference of degree. There every person who had money invested in any personal property, except in shares of National *or State* banks, could have his just debts deducted from the assessment of such personal property; here, he who has his money capital in " credits," obtains a deduction to the extent of his just debts due residents of the State. It will be observed that by the law of New York a class of investments—to wit, in shares of State banks—was subject to the same taxation as shares in National Banks. But the Supreme Court of the United States held the statute of New York, which attempted to deprive the owner of National Bank shares of the right of deduction accorded to the owners of all other personal property, except shares in State banks, to be invalid, because in excess of the restricted power of legislation derived by the State from the section of the act of Congress hereinbefore quoted. In *People* v. *Weaver*, that Court held, in effect, that by the Act of Congress power to tax was conferred on the State, with the restriction that the taxation shall not be at a greater rate than is assessed upon *any* other moneyed capital.

It would seem to be unnecessary to add that the restriction operates upon State *legislation*, and therefore the fact whether, in a particular instance, the owner of National Bank shares owes any debts is immaterial. By the law of this State he is not permitted to deduct them if he does owe any.

There is another reason why § 3640 of the Political Code —as the same read when the facts transpired out of which this controversy arose—so far as it is· applicable to the taxation of shares of a National Bank, conflicts with the act of Congress. That section provided for taxing his shares to each person owning any of the shares of the capital stock of any corporation, association, or joint-stock company—including incorporated National Banks. It provided, further, that the assessable value of each share should be ascertained by taking from the market value of the entire capital stock of the corporation the value of *all property* assessed to the corporation, and dividing the remainder by the entire number of shares. None of the personal property of a National Bank can be assessed to the bank under any law of the State, while the per-

sonal property of a State bank (other than United States bonds) may be, and is assessed to such bank. Thus a reduction is allowed in ascertaining the assessable value of the shares of State banks which is not allowed in ascertaining the assessable value of the shares of a National Bank. It is obvious, therefore, that the valuation of shares, "in the hands of individuals," of an incorporated State bank (where the value of personal property belonging to such bank has been deducted from the value of the entire capital stock) must be proportionately less than the valuation of shares of an incorporated National Bank, belonging to individuals. It is no sufficient answer to this suggestion to say that, by the State law, the personal property belonging to a State bank was assessed to the bank, and so the tax thereon was indirectly paid by the individual shareholders. The restriction of the United States statute is, that the taxation to the individual "owner or holder" of shares of a National Bank shall not be at a greater rate than is assessed upon any other moneyed capital "in the hands of individual citizens of the State." It would be a strained interpretation of the statute to hold that a proportionable part in value of the personal property belonging to a State bank, and assessed to it, was "in the hands" of an individual shareholder in such bank. It was in the power of Congress to confer upon the State the right to tax shares in National Banks with any limitations deemed proper. It has conferred the right to tax each individual owner of such shares, provided such taxation is not at a greater rate than is imposed upon any other individual who has moneyed capital invested in any other manner.

If the code had provided that the value of all the shares of a National Bank should be assessed to such bank, the provision would be in excess of the power conferred by the act of Congress, and could not be upheld upon the proposition that the tax was indirectly imposed upon the shareholders. Without doubt, then, the act of Congress by its terms recognizes a distinction between taxation to the bank and taxation to the shareholders. The former is prohibited, the latter is permitted. So far as corporations are concerned, the subject of taxation, in respect to which the taxation must be ratably the same, are the shares of National Banks and the shares of

State corporations—in such case "in the hands of individuals." In view of the language employed in the act of Congress, a tax imposed upon a corporation is not the equivalent of a tax imposed upon its shareholders.

Judgment affirmed.

THORNTON, J., and SHARPSTEIN, J., concurred.

ROSS, J., concurring:

Upon the ground first discussed by Mr. Justice McKINSTRY, I concur in the judgment.