MERCANTILE NAT. BANK OF CLEVELAND v. SHIELDS, County
Treasurer.

(Circuit Court, N. D. Ohio, E. D.   January 3, 1894.)

No. 5,122.

1. NATIONAL BANKS—TAXATION BY STATES—"MONEYED CAPITAL."
   Rev. St. U. S. § 5219, provides that taxation by a state of the shares
   of a national bank situated therein "shall not be at a greater rate than
   is assessed upon other moneyed capital in the hands of the individual
   citizens of such state." *Held,* that the term "moneyed capital" means
   money employed in a business whose object is to make profit by invest-
   ing such money in securities by way of loan, discount, or otherwise,
   which from time to time, in the course of business, are reduced again to
   money, and reinvested.

2. SAME—DISCRIMINATION.
   Rev. St. Ohio, § 2730, allows a deduction of legal bona fide debts owing
   by citizens of the state to be made from credits held by them for purposes
   of taxation, but the state courts hold that such deduction is not allowable
   from shares in a national bank.  *Held,* that this is a discrimination in
   favor of "other moneyed capital" of the state, and against national
   banks, within the prohibition of Rev. St. U. S. § 5219; and it is not less
   so from the fact that the deduction is also denied in the case of shares
   of railroads, insurance companies, and manufacturing corporations, for
   they are not "moneyed capital."

3. SAME—RIGHTS OF NONRESIDENT SHAREHOLDERS.
   Under Rev. St. U. S. § 5219, providing "that the shares of any national
   banking association owned by nonresidents of any state may be taxed
   where the bank is located," a nonresident shareholder, being compelled
   to pay the tax at such place, is entitled to all deductions from the value of
   his shares, on account of debts, that are allowed to resident shareholders.

In Equity.  On demurrer.  Bill by the Mercantile National
Bank of Cleveland against Joseph C. Shields, treasurer of Cuya-
hoga county.  Demurrer overruled.

The complainant files its bill on behalf of its shareholders, asking for a
permanent injunction against the defendant, restraining him from collecting
taxes levied upon the shares of stock owned by certain persons named in the
bill, which taxes complainant avers are illegal and void because imposed in
direct violation of section 5219 of the Revised Statutes of the United States,
which provides that taxes imposed upon shares of national banks "shall not
be at a greater rate than is assessed upon other moneyed capital in the hands
of individual citizens of such states."   The complainant further avers that
a large amount of the moneyed capital in the hands of individual citizens
of the state, and of the county of Cuyahoga and city of Cleveland, invested
in promissory notes and other obligations and securities, is, by provision of
section 2730 of the Revised Statutes of Ohio, (allowing a deduction of legal
bona fide debts to be made from "credits,") expressly exempted from taxation,
thereby making an unlawful discrimination against moneyed capital in-
vested in national bank shares, as to which no exemption or deduction is
provided for by the laws of Ohio, which discrimination is in violation of the
provision of the laws of the United States above quoted.   The bill further
alleges that some 2,489 shares of complainant's stock, owned by the several
shareholders named in the bill, were valued by the state board of equalization
of Ohio for taxation for the year 1892 at $149,340, and were certified by said .
board to the auditor of Cuyahoga county as the taxable value thereof, which
value, multiplied by the rate of two and seventy-five hundredths cents on the
dollar, fixed for said year as the rate of taxation upon all property situated in
said county upon a dollar's valuation, amounted, on said shares, to $4,106.84.
The bill further avers that between the first and second Mondays in May of
1892, when the cashier of said bank made return to the auditor of said

county of the names and residences of the shareholders of said bank, with the numbers and par value of the shares of the capital stock of said bank, each of said shareholders was indebted and owing to others, of legal, bona fide debts, a sum in excess of the "credits" from which, under the laws of Ohio, he was entitled to deduct said debts, to an amount equal to the par value of said shares, which said excess of said debts over credits, as aforesaid, the said shareholders were entitled to have deducted from the assessed value of said shares so severally owned by them. The complainant further avers that the said auditor did deduct and abate said indebtedness of said shareholders from the assessed value of their shares, thereby exempting the same from taxation, and delivered the duplicate, with said deduction, to the defendant as treasurer of said county, and said complainant paid to said treasurer, on December 20, 1892, the half-year taxes so due. The complainant further avers that the auditor of said county, on June 10, 1893, disregarding the deductions allowed as aforesaid, did, without authority of law, add to said duplicate the allowances so aforesaid made, and did assess against the same the rate and percentage of taxation for said city, county, and state for 1892, and now threatens to collect by distraint the said tax on said shares, with said deductions disallowed. Complainant further avers that, in case said taxes are not paid, the defendant threatens to give notice of a tax lien upon said shares to the cashier of said bank, so that, under section 2839 of the Revised Statutes of Ohio, such stock cannot be transferred, and no dividend can be paid thereon. Complainant further avers that, if said stock is permitted to be sold under said provision of law, great and irreparable injury will be done to the business of said bank. It is further alleged that since the tax as levied on said shares on December 20, 1892, was paid, a part of said shares have been sold and delivered. It is further averred that in a prior suit pending in this court between Whitbeck, as treasurer, and complainant, the precise issues now made were heard and adjudicated, and a decree entered, perpetually enjoining the defendant from collecting the tax then assessed, in which decree the right of shareholders to deduct from the value of their shares their bona fide debts was recognized and enforced. Said decree is still in full force; and complainant alleges that said issue so determined was between the same parties, and involved the same subject-matter and legislation. The complainant tenders the amount it claimed to be due, and asks an injunction to restrain the collection of the further amount put on the duplicate as aforesaid, and for the reasons stated. To this bill the defendant interposes a general demurrer.

Boynton & Horr, for complainant.
S. K. Dissette, for defendant.

RICKS, District Judge, (after stating the facts.) The defendant relies upon a recent decision of the supreme court of Ohio, of Niles v. Shaw, 50 Ohio St. ——, 34 N. E. 162, as justifying the county authorities in refusing to allow shareholders of national banks in the city of Cleveland to deduct from the value of their shares as fixed for taxation their bona fide indebtedness. The syllabus of the Ohio decision reads as follows:

"Our tax laws do not authorize the deduction, from the value of shares in a national bank entered upon the duplicate for taxation, of legal, bona fide debts owing by the holders of such shares of stock."

It is contended that this construction of an Ohio statute relating to the levying and collecting of state taxes by the highest judicial tribunal of the state is controlling upon the federal courts. This proposition would unquestionably be true if the only question for consideration was the application or enforcement of such state statute. If nothing more were here involved, we would feel controlled by the construction of the Ohio statute as given by its

highest court. And such construction is not questioned. Indeed, the supreme court of the United States, in the case of Whitbeck v. Bank, 127 U. S. 193, 8 Sup. Ct. 1124, in affirming the decree of this court in a similar suit, seeking the same relief now prayed for, approved the finding of this court that: .

"The laws of Ohio make no provision for the deduction of bona fide indebtedness of any shareholder upon the shares of his stock, and provide no means by which said deduction can be secured."

It is for the very reason that the laws of Ohio fail to provide for such right to the shareholders of national banks that the jurisdiction of this court attaches, and enables it to give the relief for which the complainant prays. The laws of Ohio, as construed by its highest courts, fail to give to shareholders of national banks the right to deduct from the value of their shares of stock their bona fide debts. That right is given to individual citizens in the state who have moneyed capital otherwise invested. These laws therefore discriminate against the holders of such bank stock, and conflict with the laws of congress. The contention that there is such a conflict, and that the laws of the United States on this subject are paramount and must prevail, presents the federal question conferring jurisdiction upon the court in this case, which is a controversy between citizens of the same state, not otherwise cognizable in this court. Section 5219 of the Revised Statutes of the United States provides as follows:

"Nothing herein shall prevent all the shares of any association from being included in the valuation of personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state in which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of the individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes to the same extent according to its value as other real property is taxed."

That the foregoing provision was necessary to authorize the states to impose any tax whatever on national bank shares is abundantly established by the cases of McCulloch v. State, 4 Wheat. 316; Osborn v. Bank, 9 Wheat. 758; People v. Weaver, 100 U. S. 539. In the latter case, Mr. Justice Miller, in delivering the opinion of the court, said:

"As congress was conferring a power on the states which they would not otherwise have had to tax these shares, it undertook to impose a restriction on the exercise of that power, manifestly designed to prevent taxation which should discriminate against this class of property as compared with other moneyed capital. In permitting the states to tax these shares it was foreseen—the cases we have cited from our former decisions showed too clearly—that the state authorities might be disposed to tax capital invested in these banks oppressively. This might have been prevented by fixing a precise limit in amount, but congress, with due regard to the dignity of the states, and with a desire to interfere only so far as was necessary to protect the banks from anything beyond their equal share of public burdens, said: 'You

may tax the real estate of banks as other real estate is taxed, and you may tax the shares of the bank, as the personal property of the owner, to the same extent you tax other moneyed capital invested in your state.' It was conceived that, by this qualification of the power of taxation, equality would be secured and injustice prevented."

It is therefore clear that congress intended that the holders of shares in national banks should not be discriminated against by state tax laws.

Do the tax laws of Ohio, as construed and enforced, result in such discrimination? They certainly do if the citizens of that state are allowed to deduct, from "other moneyed capital" in their hands, their bona fide debts, and pay tax only on the balance so ascertained. It is earnestly contended by counsel for the defendant that "moneyed capital" in Ohio is not so favored. It is insisted that shares in railroads, in manufacturing corporations, and in insurance companies are moneyed capital, and that the holders thereof are not allowed to deduct, from the money value of such stock, their bona fide debts. It is important, therefore, to determine what is "moneyed capital," within the meaning of the United States statute, for it must be conceded that it is the construction of a federal statute by the federal courts which must control in this contention. Happily, we need not be confused as to the meaning of these terms in the statute. Mr. Justice Matthews, in his usual luminous and forceful statement of the law in the case of Mercantile Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, says that though a railroad company, a mining company, an insurance company, or any other corporation of that description, may have a large part of its capital invested in securities payable in money, and so may be the owners of moneyed capital, yet the shares of stock in such companies held by individuals are not moneyed capital, because the operations in which such money so invested in such companies is employed is not the business of loaning money for hire, or of discounting bills of exchange, or receiving deposits payable on demand, etc. It is where money is used in such a manner that it becomes moneyed capital, within the meaning of the laws of the United States, for it then becomes capital invested in a business competing with national banks, and it is the duty and policy of congress to protect the business and capital of the latter against unjust discrimination. A share in a bank would, therefore, be moneyed capital, while a share in a railroad or a mining or manufacturing company would not. Therefore, the learned justice said:

"The terms of the act of congress, therefore, include shares of stock, or other interests owned by individuals, in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its uses. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans or in securities for the payment of money, either as an investment of a permanent character, or temporarily, with a view to sale, or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as 'personal property.'"

With the above definition of what is meant by "moneyed capital," it is evident that, under the tax laws of Ohio, that kind of money and capital has exemptions and privileges over and above moneyed capital invested in national bank shares. Money and capital employed in the manner stated in the case above cited, in the hands of individual citizens of Ohio, is not fully taxed when the owner is allowed to deduct therefrom his bona fide debts. Such deductions are made and allowed by the laws of Ohio. It was so found by the supreme court of the United States in the case of Whitbeck v. Bank, heretofore cited. In that case the court said: "An owner of moneyed capital other than shares in a national bank has a deduction equal to his bona fide indebtedness made from the amount of the assessment of the value of such moneyed capital." Taxation upon such a basis is therefore a discrimination against owners of shares of national banks in that state, which is prohibited by the laws of the United States. It follows, for these reasons, that the complainant is entitled to the relief prayed for as to all the shareholders set forth in its bill.

Having reached this conclusion, it becomes unnecessary to consider the several averments of the bill which claim relief upon the ground that the same issue has been heretofore adjudicated between these same parties, and that the action of the county auditor in subsequently adding to the tax duplicate the deductions and set-offs theretofore allowed the shareholders of the bank was illegal and inequitable.

The further question presented is whether nonresident stockholders of national bank shares are entitled to the same deduction of bona fide debts allowed resident shareholders. The act of congress granting to the several states the right and power to tax national bank shares provides that the tax shall be assessed at the place where the bank is located. This compels nonresident shareholders to pay on their shares the tax imposed in the state, county, and city where the bank is located. He cannot choose the place of his residence as fixing the rate of his tax upon his bank shares. He must pay the rate fixed at the place where the bank is located. He ought, therefore, to be allowed to pay that tax upon the same conditions, and subject to the same deductions, allowed to resident shareholders. This is simple justice. Article 14 of the constitution of the United States extends equality of protection to all its citizens by the provision that the states shall "not deny to any person the equal protection of the laws." Section 2, art. 4, further provides that "the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." In Ward v. Maryland, 12 Wall. 418, the supreme court of the United States, in defining the "privileges" and "immunities" secured by the above provision of the constitution, says:

"It will be safe to say that the clause plainly and unmistakably secures and protects the right of any citizen of one state * * * to be exempt from any higher rate of taxation or excises than are imposed by the state upon its own citizens."

It seems plain, therefore, from these constitutional provisions, and the interpretation put upon them by the supreme court of the

United States, that nonresident shareholders of national banks are entitled to the same exemptions and deductions, as against the value of their shares of stock, in ascertaining the taxes due from them, that are granted to resident shareholders, and that, if the latter show a case of discrimination against them by the state which entitles them to relief in this court, nonresident shareholders in the same bank, who have taken the same necessary measures to protect their right of deduction, will be entitled to the same relief. A decree may be prepared accordingly.