[Sac. No. 158.   Department Two.—February 3, 1897.]

O. McHENRY ET AL., APPELLANTS, *v.* W. A. DOWNER, TAX COLLECTOR, ETC., RESPONDENT.

TAXATION—NATIONAL BANK STOCK—CONSTITUTIONAL LAW—PROVISION FOR TAXATION NOT SELF-EXECUTING.—Section 1 of article XIII of the constitution, providing that "all property in the state not exempt under the laws of the United States shall be taxed in proportion to the value, to be ascertained as provided by law," and that "the word 'property' as used in this article and section is hereby declared to include moneys, credits, bonds, stocks," etc., is not self-executing, but merely fixes the liability of property to taxation, and the standard upon which it is based, viz., in proportion to its value, but confides the duty of prescribing the machinery by which to ascertain the value to the legislature, with which the power of taxation is lodged; and it cannot be properly objected to the taxation of shares of national bank stock that they were not assessed in pursuance of the provisions of that section of the constitution.

ID.—NATIONAL BANKS AGENCIES OF FEDERAL GOVERNMENT—CONSENT TO TAXATION—RESTRICTIONS UPON POWER.—National banks are agencies of the federal government, and are not subject to the taxing power of the state without its consent; but the general government has consented in section 5219 of the Revised Statutes of the United States that the states may tax the stock or shares of national banks, subject to the restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state, and the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere.

ID.—RATE OF TAXATION—CONSTRUCTION OF FEDERAL STATUTES—DISCRIMINATION NOT ALLOWED.—The clause in the United States statute, that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital," etc., means more than that there shall be no more discrimination with respect to the percentage, or any valuation which might be made, but that taking the assessment, rate of assessment, and valuation together, the taxation in shares of national banks should not be greater than on other moneyed capital, and where there is a discrimination under the state law of taxation of shares of national banks in favor of state banks or other moneyed capital, such discrimination is violative of the act of Congress.

Id.—Construction of Political Code—Void Tax of National Bank Shares.—Under section 3608 of the Political Code, shares of stock in national banks are not subject to assessment for purposes of taxation and the shares of state banks being exempt from taxation under that section, the shares of stock in national banks cannot be assessed as other personal property, as the machinery provided therefor works such a discrimination in favor of state banks and against shares of national banks as to be violative of the restrictions of the act of Congress, and an assessment and tax of national bank shares is null and void.

Appeal from a judgment of the Superior Court of Stanislaus County. William O. Minor, Judge.

The facts are stated in the opinion.

*Lloyd & Wood,* for Appellants.

*District Attorney L. W. Fulkerth,* and *P. H. Griffin,* for Respondent.

Searls, C.—This is a controversy without action, submitted upon an agreed statement to the superior court in and for the county of Stanislaus, under the provisions of section 1138 of the Code of Civil Procedure, to determine the legality of a tax imposed upon the plaintiffs and the right of the defendant as tax collector to enforce payment thereof.

By the judgment in the case the validity of the tax and the right of the defendant to collect the same was upheld. Plaintiffs appeal from the judgment, and the cause comes up on the judgment-roll.

It appears from the agreed statement: 1. The First National Bank of Modesto is a banking corporation created under and pursuant to the laws of the United States in relation to the creation and organization of national banks, with a paid-up capital stock of one hundred thousand dollars, divided into one thousand shares of one hundred dollars each, and located and having its place of business at Modesto, in the county of Stanislaus, state of California. 2. The plaintiffs, and each of them, were at the several dates herein mentioned the holders and owners of certain of the shares of stock in said national bank. The number of shares owned and

held by each of the plaintiffs is stated in the agreed statement, but is unimportant here. 3. For the years 1894 and 1895, or for either of said years, said plaintiffs, or any of them, or the corporation or its officers, did not furnish to the assessor of the county a statement showing the respective interests or property of said plaintiffs, or any of them, in or to the paid-up capital stock of said First National Bank, or in or to any of its personal property or the shares of the capital stock owned by them in said corporation, and did not furnish any statement showing the amount of any debt or debts due from them, or any of them, or from the corporation to *bona fide* residents of this state, or to firms or corporations doing business in this state. 4. For the years 1894 and 1895 the assessors of said Stanislaus county assessed the said First National Bank, upon its real estate and mortgage interests in real estate, and upon the furniture, and fixtures of its banking office only, at the full cash value of such real estate, mortgage interests, furniture and fixtures, said bank claiming that its other property was not subject to taxation under state authority. For the years 1894 and 1895 all the several banking corporations and other corporations located in said county, other than national banking corporations, were assessed upon all their real and personal property at its full cash value, but the shareholders in state banks and state corporations were not assessed upon their shares of stock therein, such shares of stock being treated as exempt from assessment under the provisions of section 3608 of the Political Code of the state of California. 5. J. F. Campbell, county assessor for said Stanislaus county for the year 1895, assessed to each of the plaintiffs herein the shares of stock by them severally held in said First National Bank of Modesto. He ascertained that said shares were of the cash value of $100 per share over and above the real estate, etc., assessed to the bank.

The assessor pursued the following course in arriving at the value of the stock, viz: He ascertained that the paid-up capital stock was $100,000; undivided prof-

its, $4,140; surplus, $20,000; total value, $124,140. He deducted therefrom, value real estate assessed to bank, $6,305; value mortgage interest to bank, $5,596; value office furniture, etc., to bank, $800, thus leaving a balance of $111,439. From this sum he deducted ten per cent for bad debts. He further ascertained that the capital stock was divided into 1,000 shares of $100 each, and thus determined that they were of the value of $100 each. He also found that said shares had not been assessed for the purposes of taxation for the year 1894, and thereupon doubled the assessment of 1895, and assessed said shares at $200 each.

The state board of equalization reduced the value of all property assessed for taxation in said county for the year 1895 ten per cent, and upon the property as so reduced taxes were levied.

Plaintiffs have tendered to the tax collector all sums due from them for taxes for the year 1895, save and except the tax imposed upon said shares of stock so by them held and owned, which said last-mentioned tax they claim is contrary to law, and therefore illegal and void, and said tax collector, the defendant herein, claims that the same is lawful and therefore a good and valid claim.

As before stated, the superior court adjudged that the taxes imposed upon the shares of stock are legal and valid, and that defendant has a right to collect the same. The plaintiffs appeal.

The points made by appellants for reversal are: 1. The taxes in question were not assessed in pursuance of the provisions of section 1 of article XIII of the constitution of this state; 2. The taxes in question are illegal, because the property assessed is not subject to assessment for the purposes of taxation, and is exempt therefrom by the provisions of section 3608 of the Political Code; 3. The taxes in question are illegal because they were levied in violation of the provisions of the national bank act.

·For the sake of greater brevity we shall consider the propositions involved in the several contentions of appellants, not in the order of their sequence, but together.

Section 1 of article XIII of the constitution of the state is as follows: " All property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law. The word ' property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership; *provided*, that growing crops, property used exclusively for public schools, and such as may belong to the United States, this state, or to any county or municipal corporation within this state, shall be exempt from taxation. The legislature may provide, except in the case of credits secured by mortgage or trust deed, for a deduction from credits of debts due to *bona fide* residents of this state."

It will appear at a glance that the foregoing constitutional provision is not, and does not pretend to be, self-executing. All property not .exempt shall be taxed in proportion to its value, but that value is to be "ascertained as provided by law." The constitution fixes the liability of property to taxation and the standard upon which it is based, viz., *in proportion to its value*, but the duty of prescribing the machinery by which to ascertain such value is confided to the legislature.

" Taxes are the enforced proportional contribution of persons and property, levied by the authority of the state, for the support of the government and for all public needs." (Cooley on Taxation, 1.)

· The power of taxation is lodged with the legislative branch of our government.

" The legislature must, therefore, determine all questions of state necessity, discretion, or policy involved in ordering a tax and in apportioning it, must make all the necessary rules and regulations which are to be ob-

served in order to produce the desired returns, and must decide upon the agencies by which collections shall be made." (Cooley on Taxation, 2d ed., 43.)

The question presented seems to divide itself under two heads: 1. May the legislature of the state tax the stock of national banks? and, if yea, 2. Has it provided adequate means for so doing? The first query is of easy solution.

National banks are agencies of the federal government, selected as a necessary or convenient means to the exercise of its functions, and are not, except by its consent, subject to the taxing power of the states.

Were it otherwise, it is said a state dissatisfied therewith could tax them out of existence, and thus indirectly hamper and thwart the operations of the general government. (*McCulloch* v. *Maryland*, 4 Wheat. 316; *Osborn* v. *Bank of United States*, 9 Wheat. 738; *Van Allen* v. *Assessors*, 3 Wall. 573; *Austin* v. *Boston*, 14 Allen, 359; *Flint* v. *Boston*, 99 Mass. 141; 96 Am. Dec. 713; *State* v. *Newark*, 39 N. J. L., 380.)

The general government has, however, consented that, subject to certain restrictions, the states may tax the stock or shares of national banks. By the act of Congress of June 3, 1864, as amended February 10, 1868 (U. S. Rev. Stats. sec. 5219), it is provided as follows: " Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located and

not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

It will thus be seen that, subject to the two restrictions enumerated in the act of Congress, shares of stock in national banks are proper subjects of state taxation.

In the present instance the shares were taxed in the county and city or town where the bank is located, and, as none of the shareholders appear to be nonresidents of the state, no violation of the restriction as to the place of taxation appears. This brings us to a consideration of the second question, viz: Has the legislature of this state provided the means for the taxation of the stock in harmony with the requirement of the act of Congress, which requires that the rate of taxation shall not be in excess of that imposed upon other moneyed capital in the hands of citizens of the state?

Prior to 1881 section 3640 of our Political Code read as follows: "Each person, firm, or corporation owning or having in his or its possession any of the shares of the capital stock of any corporation, association, or joint stock company, shall be assessed therefor. If the corporation, association, or joint stock company has its principal place of business in this state, the assessable value of each share of its stock shall be ascertained by taking from the market value of its entire capital stock the value of all property assessed to it, and dividing the remainder by the entire number of shares into which its capital stock is divided. The owner or holder of capital stock in corporations, associations, and joint stock companies whose principal place of business is not within the state, must be individually assessed for such stock," etc. The section provided further that shareholders in their statements to the assessor should designate the number of shares held by them, and the name of the corporation, and that they should present a certificate as to the amount or value of property assessed to the corporation in order to secure a deduc-

tion on account thereof. Under the law, as it then stood, the shares of stock held by Nancy Miller in the National Gold Bank of D. O. Mills & Co., were assessed to her for the purposes of taxation in the same manner substantially as in the case at bar.

An agreed statement was made involving the same facts substantially as here. The case came before this court in *Miller* v. *Heilbron*, 58 Cal. 133, whereupon it was held that the attempted taxation of the shares in the National bank was in violation of the permission and limitations contained in section 5219 of the Revised Statutes of the United States, and therefore void.

It was held in that case that the fact that shares in the national bank were assessed the same as shares in state banks was not sufficient; that the clause in the United States statute that "the taxation shall not be at a *greater rate* than is assessed upon other moneyed capital," etc., "means something more than that there should be no discrimination with respect to the percentage *or any* valuation which might be made; but that, taking the assessment, rate of assessment, and valuation together, the taxation on shares of national banks should not be greater than on other moneyed capital." Then, as now, under our constitution and laws, "other moneyed capital" invested in credits entitled the holder thereof to deduct therefrom all debts due by the party assessed to *bona fide* residents of the state.

As national bank shares are property, and not *credits*, the assessor is not authorized to deduct from the value thereof debts due by the owner to others; hence it was held that there was a clear discrimination in favor of other moneyed capital and against the holders of such bank shares. *People* v. *Weaver*, 100 U. S. 543, is referred to and relied upon in support of the conclusion reached, and, we think, supports such conclusion.

So in *Van Allen* v. *Assessors, supra,* where a statute of the state of New York provided for the taxation of national bank shares at the same rate as was imposed upon other moneyed capital in the hands of the other

individuals of the state, but did not impose a tax upon the shares of state banks, although a tax was levied upon the capital of such state banks, and it was held, under the act of Congress of 1864, which contained a provision, in addition to the present restrictions, that the rate of taxation imposed upon such shares should not exceed that imposed upon state banks, that a tax upon the capital of state banks was not the equivalent of a tax upon the shares of national banks, not exceeding their par value, for the reason that the capital of state banks may consist of the bonds of the United States which are exempt from state taxation, etc., and that the tax was hence invalid.

After the transaction arose out of which *Miller* v. *Heilbron, supra,* grew, and in 1881, section 3608 of the Political Code was amended so as to read as follows: " Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent, and the assessment and taxation of such shares and also of the corporate property would be double taxation. Therefore all property belonging to corporations shall be assessed and taxed, but no assessment shall be made of shares of stock, nor shall any holder thereof be taxed therefor."

The constitutionality of this section was drawn in question in the case of *People ex rel. Burke* v. *Badlam,* 57 Cal. 594, which was an application for a writ of mandate to compel Badlam, as assessor, to assess to various holders certificates of stock by them held in corporations, etc.

The court upheld the section of the code, placing its opinion upon the ground that, where all of the property of a corporation was assessed to the corporation, to again assess the shares of stock to the shareholders would be double taxation, which is inhibited by our constitution.

Assuming then, as we must, that section 3608 of the Political Code is constitutional, this difference is pre-

sented in the method of valuation for the purposes of taxation between state banks and the shareholders of national banks.

The shares of stock in the former are not assessed. In lieu thereof, all the property of the corporation is assessed. But this does not include government bonds or other nonassessable property, and all solvent creditors unsecured by deed of trust, mortgage, or other lien on real or personal property due or owing are to be assessed subject to a deduction for all debts (not secured as above) due and owing by the corporation to *bona fide* residents of the state. (Pol. Code, sec. 3629.)

In the latter, that is to say in the case of shares of national banks, the stock is assessed at its value after deducting only the property actually assessed to the corporation, that is to say its real estate and debts secured by mortgage, trust deed, etc. As before stated, the assessor is not authorized to deduct debts owing by the owner of the shares, for the reason that shares of stock are property and not credits from which, under the law, debts can be deducted.

The disparity in the mode of valuation becomes more apparent when we consider that one-third of the paid-up capital stock of every national bank must be invested in nonassessable property, viz., in the registered bonds of the government of the United States, which are required to be deposited with the treasurer of the United States as security for its notes, before it can be authorized to do business. No method is provided in our statute for deducting from the value of the shares anything on this account, and in the case at bar it was not done.

Waiving, then, the fact that shares in state banks are not assessed at all, and assuming that the assessment of all the property of a state bank *may be* the equivalent of the assessment of the shares of stock in a national bank, and the stubborn fact still remains that under our law it is not such equivalent, but militates most

grievously against the owners of stock in the national banks.

Exact equality, from a mathematical standpoint, may not be attainable in the matter of taxation; but a system which of necessity, and not from accident or error of judgment, discriminates against the owners in national banks to a large extent, is in violation of the restriction imposed by Congress upon the privilege granted to the states to tax shares in national banks.

In other words, as was said in *Boyer* v. *Boyer*, 113 U. S. 689, the expression used in the United States statute, "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital," etc., refers not simply *to the rate of taxation*, but to the whole process of assessment and valuation, and that a state law which "establishes a mode of assessment by which such shares are valued higher in proportion to their real value than is other moneyed capital," etc., is in violation of the restriction contained in the act of Congress.

The paramount object of the restriction by the act of Congress upon the taxation of shares in the national banks by the several states is aptly stated by Mr. Justice Mathews in *Mercantile Bank* v. *New York*, 121 U. S. 138, in which case, after stating the doctrine of previous cases, he added: "The main purpose, therefore, of Congress in fixing limits to state taxation on investments in shares of national banks was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

Keeping steadily in view this policy and purpose, and many of the cases which at first blush seem irreconcilable become plain and are referable to patent sources of distinction. It is contended by counsel for respondent that the cases of *Miller* v. *Heilbron* and *Van*

*Allen* v. *Assessors, supra,* have been virtually overruled by the later cases in the supreme court of the United States. We have examined such later cases with some care, and while it must be conceded that some of them restrict the broad reasoning of those cases and point out numerous exceptions to the general rules therein enunciated, we see no expression of dissent from the principles decided.

It has been held that savings banks and trust associations are not within the reason of the rule provided by Congress, and hence that the restriction does not apply to them. (*Mercantile Bank* v. *New York, supra.*) Also that "it could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt." (*Hepburn* v. *School Directors,* 23 Wall. 480; *First Nat. Bank of Garnett* v. *Ayers,* 160 U. S. 660.) Also, that "the act of Congress was not intended to curtail the state power on the subject of taxation." It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested. It was not intended to cut off the power to exempt particular kinds of property if the legislature chose so to do. (*Adams* v. *Nashville,* 95 U. S. 19.)

We think the spirit breathed in all the later cases is this: The several states may exempt certain personal property from taxation; may provide a different mode of taxation for property, the use of which produces no competition with capital invested in national banks. These exceptions, however, must not operate as an unfriendly discrimination against investments in national bank shares. In view of this doctrine and of the condition of our law, we are of opinion: 1. That under section 3608 of our Political Code, shares of stock in national banks are not subject to assessment for the purposes of taxation; 2. If it be conceded that this section has no application to the shares of stock in national banks and that they may be assessed as other personal property, then the machinery provided therefor works

such a discrimination in favor of state banks and against shares of national banks that it is violative of the restrictions of the act of Congress, and that the assessment and tax in the case at bar is null and void.

We recommend that the judgment of the court below be reversed and the court directed to enter judgment in favor of the plaintiffs.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment of the court below is reversed and the court directed to enter judgment in favor of the plaintiffs.

MCFARLAND, J., TEMPLE, J., HENSHAW, J.