THE POMEROY COAL COMPANY v. THOMAS J. EMLEN, as County Treasurer of Atchison County.

TAXATION — *Valuation* — *Addition of Property to List.* The county commissioners, sitting as a board of equalization, may raise or lower the valuation placed upon the personal-property statement of the owner by the assessor who received and returned such statement, but as such board they have no power to add to such personal-property statement, as returned by the assessor, any additional property not already listed therein.

*Error from Atchison District Court.*

THE case is fully stated in the opinion.

*B. F. Hudson*, for plaintiff in error.

*T. M. Pierce*, county attorney, and *W. W. & W. F. Guthrie*, for defendant in error.

Opinion by STRANG, C.: This is a proceeding in which the plaintiff in error, who was plaintiff below, on the 22d day of November, 1889, filed in the district court of Atchison county his petition praying the court to allow an order restraining the collection of certain taxes therein set out. The court heard the application December 2, 1889, upon the petition and oral evidence, and took the same under advisement until December 7, when it rendered judgment refusing to allow the order prayed for by the plaintiff in his petition; to which ruling rendering said judgment the plaintiff objected and excepted, and comes here by its case-made alleging that the court below erred in refusing said order, and asks that the judgment of the said court be reversed.

This case grows out of the action of the county commissioners of Atchison county, sitting as a board of equalization, by which they increased the assessment of the plaintiff for purposes of taxation. The assessor whose duty it was to assess the plaintiff called on the company, and received from J. W. Fisher, who was secretary and treasurer thereof, the personal-

property statement of said company. Mr. Fisher on behalf of the plaintiff listed the average of stock on hand at the sum of $6,000, and listed furniture worth at its alleged true value $450. The assessor, pursuant to an agreement entered into by all the assessors of the county to value property at one-third its true value, placed upon the property of the plaintiff an aggregate valuation of $2,150 — $2,000 upon the average amount of stock, and $150 upon the item of furniture. The county commissioners of Atchison county met as a board of equalization on the 3d of June, 1889, and while sitting as such board, on the 12th day of June, added to the assessment of the plaintiff the sum of $7,850. This was done arbitrarily by the commissioners, or two of them, and without any notice to the plaintiff. Now, the plaintiff claims that such addition was a new and additional assessment of the plaintiff's property, made by the county commissioners sitting as a board of equalization, and avers that the board had no power as such to make any additional assessment. If the plaintiff is right in its contention as to the fact, we think its conclusion of law is correct. The commissioners were in session as a board of equalization. It is admitted that as such board they added to the assessment of the plaintiff the sum of $7,850. Now what did such action of the board amount to? Was it a new assessment by them, or was it simply a raising of the valuation of the property of the plaintiff already listed? If it was the making of a new assessment, it was without authority of law. If it was simply a raising of the valuation put upon the plaintiff's property as listed by the assessor, then it was within the authority of the board and of the very purpose for which it met, and entirely proper if not raised higher than the property of the rest of the tax-payers of the county.

Mr. Wilcox, chairman of the board, when asked how much the board increased the valuation of the first item in the plaintiff's assessment as given in by itself to the assessor, and returned by him, to wit, the average of stock on hand during the preceding year, answered, "We didn't talk about the first item — the average stock. There was nothing said about it."

When asked if he believed the plaintiff had failed to list the full amount of its average stock, answered, "I did, sir; I did not believe they had returned enough." Again, Wilcox testified that the board did not complain of the average of stock so far as the retail business of the company given in Atchison was concerned, but said it believed the company should be assessed for the wholesale business it did, and the business it had in Topeka, Omaha, and other places. It is apparent from the testimony of Mr. Wilcox, to say nothing of the other testimony in the case, that the board did not think it was raising the value of the plaintiff's property already listed, above the one-third valuation agreed upon by the assessors, but that it believed that the plaintiff had other personal property that it had not listed. Just what form such property was in, the board evidently did not clearly understand, as it called it capital invested in business outside of the city of Atchison, and which it believed should in some way be reached and assessed in the city of Atchison where the plaintiff company had its home office and headquarters. If there was no evidence of witnesses upon this question, it would in our judgment clearly appear from the proceedings of the board of equalization, as shown by the record offered and received in evidence in the case. The entire amount of property listed by the plaintiff was $6,000, average amount of mercantile stock, and $450 worth of furniture. . The board was satisfied with the furniture as listed, which left but one item on the personal-property statement of the plaintiff to be considered, and that was the stock in trade of the company.

The law requires the assessor to value the property listed at its true value. . Where the personal property to be listed consists exclusively of stock in trade, the statute declares what shall constitute the property to be listed. It is the average of stock on hand during the preceding year, and the statute also points out the method by which such average may be ascertained. The sum in money represented by such average is the true value of such personal property. If, therefore, the assessor values the average of stock and returns the same

at a sum in money less than the amount represented by such average, the board of equalization may, for purposes of equalization, raise the valuation placed upon said average to a sum equal to, but not greater than, the sum represented by said average. In this case the board of equalization added to the valuation placed upon the property listed a sum greater than the true value of all the property listed, which shows that it did not raise the valuation of the property listed, as placed thereon by the assessor who made the assessment, but that it added to the personal-property statement of the plaintiff property not listed. This the board had no power to do. Such an addition is a new assessment. The statutes point out the mode by which both real and personal property are to be assessed, and by whom the assessment is to be made; but nowhere do they in any way authorize the county commissioners, sitting as a board of equalization, to act as assessors. Property both real and personal is assessed for purposes of taxation by township and city assessors. Section 4, chapter 107, General Statutes of 1889, points out by whom personal property is to be listed for assessment and taxation. Section 59, same chapter, requires the township and city assessors, between the 1st of March and 1st of May of each year, to call upon all persons, companies, corporations and listing agents for their personal-property statements. Section 14 requires the said assessors to value the property listed. Section 66 requires the assessors to return to the county clerk the statements of personal property of persons required to make them. These statements are returned with the valuation placed upon the items of property therein listed by the assessors, and such returns constitute the assessment of the personal property of the county, subject to the power of the board of equalization to raise or lower the valuation placed upon the property therein listed, unless the county clerk or board of county commissioners has reason to believe that some person whose duty it was to make a personal-property statement has given to the assessor a false statement, or no statement at all, of his personal property, in which case said county clerk or board or county commission-

ers may proceed at any time before final settlement with the treasurer to correct the returns of the assessor and charge such person for taxation with whatever property he should have listed. (Gen. .Stat. of 1889, ch. 107, § 70.) To enable the county clerk or board of county commissioners to successfully correct such returns, the county clerk is authorized to issue compulsory process and bring before him any persons whom he may suppose have knowledge upon the subject; and if any person fails to appear he is guilty of a misdemeanor, and subject to fine and imprisonment. But before the county clerk or board of county commissioners shall proceed to correct any return of the assessors, they must give the property-owner five days' notice, to be served as required by § 70. It will thus be seen that ample provision is made for the assessment of personal property. That it is to be made in the first instance by the township and city assessors, and by them returned to the county clerk; and any corrections of said returns are to be made by the county clerk or board of county commissioners, after five days' notice to the property-owner to be affected thereby, but never by the board of equalization. Section 73 creates the board of equalization, while § 74 defines its powers and duties. An examination of these two sections will disclose that the word "assessment" is not to be found therein. This board is to fairly and impartially equalize the valuation of the personal and real property of the county. That is, if horses are assessed in one township in the county at $15 each, and in another township at $25 each, the board of equalization may raise the valuation of the horses as returned by the assessor in the first township to $20 each, and lower the valuation as returned by the assessor in the latter township to $20 each, in order to equalize the valuation on horses in the two townships. But the board may not add to the assessment as returned by the assessor an additional horse or horses. Or, if land in one township is assessed at $3 per acre, and in another at $7, as shown by the returns of the assessors, the board, to equalize the valuation in the two townships, may raise the three-dollar valuation to $5, and lower

the seven-dollar valuation to $5; but it may not add to the return of any assessor an additional piece of land not already listed.

In the case at bar, there was no want of power properly lodged to enable the proper authorities to secure an assessment of all the personal property of the plaintiff. If the county clerk or board of county commissioners had reason to believe that the plaintiff had not listed for taxation all of its personal property, they had ample power, under § 70, above referred to, to secure a full assessment of all its personal property. They could have served notice on the plaintiff, issued process, and brought the officers of the plaintiff company, or any other persons having knowledge upon the subject, in to testify under oath, and thus learn all about the plaintiff's property, and after such hearing add to its assessment as returned by the assessor any other personal property they found the plaintiff possessed of. The object of the commissioners seemed to be to secure a fair assessment of the property of the county for taxation, but they mistook the method. The legislature has not, and likely will not, confer arbitrary power upon the commissioners, or any other body or person to arbitrarily assess property-owners for taxation. The power lodged with the assessors, county clerk, and board of county commissioners by the legislature, is ample for all proper purposes of assessment and taxation, and we do not think the power should be extended to any tribunal not already in possession thereof.

The defendants in this case rely on the case of *Gillett v. Treasurer of Lyon Co.*, 30 Kas. 166, and the court below seems to have regarded it at least as somewhat controlling in the case. We think a careful examination of that case will show it to be in perfect harmony with the conclusions herein reached. In that case the facts show that the assessors of Lyon county met pursuant to statute, and agreed upon a common basis of valuation for the property of their respective townships. Afterward the assessors of some of the townships ignored the agreement so made by the body of the assessors, and valued the property in their townships lower than the valuation

agreed upon, and consequently lower than like property was valued in other townships of the county. When the board of equalization met, it, in order to equalize the assessments for the several townships of the county, raised the valuations of the assessors who had ignored the agreement, to make them correspond with those of the other townships. The plaintiffs in that case held cattle in one of the townships, the assessor of which had ignored the agreement, and valued such property at a sum less than the common basis, and when the board of equalization raised the valuation on their cattle, they commenced suit to enjoin collection of taxes, alleging that the board of equalization had no power to raise the valuation as returned by the assessor, on their cattle without notice to them. This court held that the board of equalization had, since the acts of 1876, (chapter 107, § 74, Comp. Laws of 1879,) power to equalize the assessments of personal property made by the several assessors of the county by raising the assessment in the township where the plaintiffs' cattle were assessed, to correspond with the common basis agreed upon by the township assessors, without notice to the owners of property, the valuation of which the board had raised. That is all the court decided. In this case the power of the board of equalization to raise or lower the valuation of the property as returned by the assessors is not challenged. That is not the question in this case. A hasty reading of the opinion in *Gillett v. Treasurer of Lyon Co.*, 30 Kas. 166, or a reading of the syllabus, without an examination of the opinion, might mislead. In the syllabus the word "assessment" is used in a limited sense, as meaning valuation. With this understanding of the sense given to the word "assessment," the syllabus properly represents the opinion, and what was decided thereby. The term "assessment" employed in connection with general taxation means more than mere valuation. When we speak of an assessment of property as the basis for levying and collecting taxes, we mean more than valuation. "Assessment" so used is defined by Welty on Law of Assessments, page 3, as "An official listing of persons and property, with an estimate

of the value of the property of each for purposes of taxation." Here it will be seen assessment includes the listing, together with the valuation of property, and the syllabus above referred to, read in the light of this definition of assessment, and giving the word "assessment" therein this meaning, would be misleading, and so understood would not correctly represent what was decided in said case.

We recommend that the case be reversed, and remanded with instruction to allow the order of injunction.

By the Court: It is so ordered.

All the Justices concurring.