CHARLES W. DUTTON, *as County Clerk of Cloud County*, v. THE CITIZENS' NATIONAL BANK OF CONCORDIA.

1. TAXATION *of National-Bank Stock.* The word "credit," as defined in ¶ 6847 of the General Statutes of 1889, and used in the chapter providing for the assessment and collection of taxes, does not include shares of stock in a national bank, and the owners of such shares have no right to deduct from their assessed value the amount of their debts.

2. DEBTS, *Owing in Good Faith—Deduction—Valid Statute.* The statute of this state which permits debts owing in good faith by any person, company or corporation to be deducted from the gross amount of credits belonging to such person, company, or corporation, in listing their property for taxation, when the owners of shares of stock in a national bank are not allowed to deduct their indebtedness from the value of such shares, is not in conflict with § 5219 of the General Statutes of the United States, does not operate to tax such shares at a greater rate than other moneyed capital in the hands of individual citizens, and is valid—the law providing that all corporate stocks, all moneys secured by judgment or lien on real estate, all moneys on deposit in any bank, subject to withdrawal on demand, and substantially all moneyed capital of every description invested for profit, shall be subject to taxation without deduction of indebtedness.

3. INJUNCTION, *Not Maintained.* Injunction cannot be maintained to prevent the collection of a tax which the plaintiff justly ought to pay for mere irregularities in the proceedings of the assessor or other taxing officer.

## *Error from Cloud District Court.*

THE amended petition in this case alleges that the plaintiff is a corporation formed under the laws of the United States, engaged in the business of banking, at Concordia; that the authorized capital stock is $100,000, divided into 1,000 shares of $100 each, 96 of which are paid in full; that the defendant is county clerk of Cloud county; that on the first Monday of March, 1893, the assessors of the various townships and cities of Cloud county agreed among themselves to assess taxable property at one-third of its real value; that on the 9th day of May, J. W. Peterson, cashier of the plaintiff's bank, returned under oath to D. H. Judy, the city assessor of Concordia, a list of the names of the stockholders of the plaintiff bank, and the amount and value of the stock held by each, together with the value of the undivided profits and surplus, and a list of the real estate owned and held by the plaintiff; that thereupon, on the said 9th day of May, said assessor assessed George Palmer, one of the stockholders of said bank, on 10 shares of capital stock, and said Palmer, having filed with him an affidavit stating the amount of stock held by him, and that he was in good faith indebted in the sum of $1,000, and had no other credits from which to deduct the same, and that he desired the same to be deducted from said stock so held by him, said asseessor set off said indebtedness against said 10 shares of stock, and did not assess said Palmer on account of his being the owner and holder thereof. Then follow similar allegations with reference to the assessment of stock held by various other persons in the plaintiff's bank. It is then averred that on said date the plaintiff was owner and holder of 40 shares of its stock, held in its own name, which was not listed by the said Judy for taxation; that the affidavits made and filed by said parties as a part of their statements of personal property set out in full the amount and nature of all the credits owned by such parties, and the amount and nature of the debts sought by them to be deducted therefrom, giving the names of the several creditors to whom

they were indebted; that the debts owing by them were *bona fide,* and were not owing to any person, company, or corporation as depositors in any bank or banking association, or with any firm engaged in the business of banking in this state or elsewhere, nor in any bond, note or obligation given to any mutual insurance company, or deferred payment or loan for a life-insurance policy, or on account of any unpaid subscription to any religious, literary, scientific, benevolent institution or society; nor were said debts, or any of them, created by a loan on government bonds or other nontaxable securities; nor had any of said stockholders other credits from which said debts or any part thereof might have been deducted.

It is then alleged that the county commissioners of Cloud county, and the defendant, as county clerk, met as a board of equalization, and that on the 6th of June said board ordered D. H. Judy, as assessor of the city of Concordia, to return the value of the stock of the shareholders of the First National Bank and the Citizens' National Bank doubly assessed; that thereupon said Judy, without any notice to the parties named as stockholders, without their knowledge or consent, entered on the assessment list the words "doubly assessed," in the column designating the amount of personal property subject to taxation; that said board ordered and directed that no deductions on account of the indebtedness owing by said parties be allowed, and that each of said parties be assessed as the owners of said stock at the full value thereof, and that the order so made apply to the taxes for the year 1892. It is further stated that, in making the assessment lists of personal property belonging to the various taxpayers in the several townships and cities of said county for the years 1892–'93, it was the custom of the assessors to allow the taxpayers to set off the debts owing by them against the credits owned and possessed by them, the remainder only being returned for taxation. It is then alleged that the defendant, as county clerk, was about to extend on the tax rolls the various taxes levied, and to charge the same against said stockholders upon the basis of the amount as fixed by the

board of equalization. An injunction was sought, restraining the defendant from extending on the tax rolls taxes levied on the several amounts first credited on their assessments for debts due and owing by them, and also on the $4,000 stock owned by the bank, and also on account of the "double assessment" for the taxes of 1892. A general demurrer was interposed to the petition, which the court overruled. The defendant not desiring to further plead, and standing on the demurrer, judgment was entered granting a perpetual injunction as prayed for, and for costs. The defendant brings the case to this court.

*L. J. Crans,* and *W. H. Savary,* for plaintiff in error:

1. Can a shareholder of a national bank, at the time of assessment of his shares of stock, deduct from the value thereof the amount of his indebtedness?

2. Is that portion of our tax laws which permits deduction of debts from "credits" constitutional?

We will discuss these questions as though a shareholder was in court with proper pleadings to raise the same. The decision of either in the negative is fatal to the shareholder's claim. To determine the first of these questions involves the examination of our entire tax legislation — viewing the latter legislation in the light of the federal statute conferring on the states the power to tax shareholders of national banks. We concede that the federal statute respecting this matter is paramount; that state legislation is necessary to authorize taxation; and that such state legislation may be, under certain circumstances, void, or that it must be construed so as to prevent discrimination against such shareholders. Bearing in mind that the decisions of the supreme court of the United States furnish us the only authoritative rules on the subject, we may examine the decisions of the state courts as the opinions of eminent jurists bearing on the question — such opinions being more or less valuable as the law of the state corresponds with, or departs from, the statute of Kansas. The present question rests solely on the meaning of the terms

"credit" used in our law of 1876 and "moneyed capital" in § 5219 of the federal statute.

Our first tax law (1860) was enacted before national banks were known, and is strictly in keeping with our constitution, which indicated an intention to fully tax banks on all their property. It defined several terms used in such law, but used the word "credit" in its general acceptation. When in 1868 a new law was passed to supply that of 1860, it defined "credits," and distinguished between state and national banks, and had evidently in view to tax the former strictly in accord with the constitution and the latter in accord with the federal law. It discriminated in favor of the national banks. Let us now examine the laws of 1860, 1868, and 1876.

[Said examination of the tax laws omitted in this abstract.]

Counsel below contended, first, that plaintiff's shares are credits, and hence it could deduct debts; second, that by reason of credits containing moneyed capital, it could deduct from its moneyed capital its debts.

The first contention of plaintiff is untenable, unless by judicial legislation the term "credit" is amended to mean "the true value of shares of stock in banks and banking associations organized under the laws of this state or of the United States, together with the value of any undivided profits or surplus (less portion of the capital which may be invested in real estate), and every demand for money, labor or other valuable thing, whether due or to become due, but not secured by lien on real estate."

Before discussing the second position, we contend that, if the legislature has the power to permit debts to be deducted from any property *eo nomine*, it can permit them to be deducted from land, from animals, from manufactories — in fact from any species of property within the state, save and except moneyed capital — without being in conflict with § 5219 of the federal statute.

State taxation was resisted by the national banks, because either the law itself or the manner in which it was adminis-

tered unfairly discriminated against the shareholders.   Thus, in VanAllen v. Assessors, 5 Wall. 573, the federal statute then providing "that the tax so imposed under the laws of any state, upon the shares of the associations authorized by this act, shall not exceed the rate imposed upon the shares of any of the banks organized under the authority of the state where such association is located" (§ 41, national-banking act), whilst § 10 of the state law of 1865 "provided that the tax imposed upon such shares shall not exceed the par value thereof," but the state banks were taxable on their capital, it was held that a tax on the capital was not an equivalent to a tax on the shares of the stockholders, and that therefore the statute was void, under that provision of the national-banking act which forbids a state to impose "on a national bank a tax greater than that imposed on the state banks."

It would be idle to examine the state decisions involving the same question embraced in VanAllen v. Assessors, supra, they are so contradictory of each other — even decisions of the same supreme court being opposed to each other, and that part of the federal law having been modified.   But we will call the court's attention to a few cases wherein the supreme court of the United States has modified the above.

Counsel quoted at length from and commented upon several classes of national-bank cases, as follows: National Bank v. Commonwealth, 9 Wall. 353; Lionberger v. Rouse, 9 id. 468; Mercantile National Bank v. Mayer, etc., 12 U. S. 138; Hepburn v. School Directors, 23 Wall. 480; Adams v. Nashville, 95 U. S. 19; People v. Weaver, 100 id. 539; Supervisors v. Stanley, 105 id. 305; Hills v. Exchange Bank, 105 id. 319; Evansville Bank v. Britton, 105 id. 323; Cummings v. National Bank, 101 id. 153; People v. Commissioners, 4 Wall. 244; National Newark Banking Co. v. Mayor, etc., 121 U. S. 163.

It seems to us clear that the shareholders of the defendant in error cannot maintain the action by reason of any invidious distinction against them as shareholders of national banks.   If they have any cause of complaint, it does not

grow out of conflict between our taxing law and the act of congress, but it must be because of an inherent defect in our tax law, considered irrespective of federal statutes.   If this be so, then it follows that, if they are entitled to deduct debts from any other class of property than what falls strictly within the term " credits " as defined by the tax law, then all state bank shareholders, and, in fact, every taxpayer within the state who owes a *bona fide* debt, has the same right of deduction; and if the deduction can be made from any character of personal property, what reason can be urged why the owner of real property cannot deduct his debts from the assessed value of his land?   None whatever; for the claim in this action can only have a foundation on the principle of equality, and, carrying that principle to its logical conclusion, it results if one man can deduct his indebtedness from any of his property, so should all.

This brings us to the question: Can anyone deduct his indebtedness from the assessed value of his property?   According to the letter of the law, the possessors of certain kinds of property can, but those possessed of other kinds cannot.   Nor is this all; there is no limit to the amount to be deducted, excepting "debts [that is, all debts] owing in good faith by any person, company or corporation may be deducted from the gross amount of credits [this excludes every other kind of property] belonging to such person," etc.

Our constitution was modeled after that of Ohio, and nearly the whole body of our statute law was borrowed from that state.   Where one state adopts a law from another, the judicial construction given to the statute in the state where it originated follows it to the state of its adoption. *Bemis v. Becker*, 1 Kas. 226; *Stebbins v. Guthrie*, 4 id. 353.

Section 3, article 12, Ohio constitution, is the same as § 2, article 11, of our constitution.   Deductions are not allowed to banks for indebtedness under either law, but in Ohio the ordinary taxpayer could deduct *bona fide* debts from moneys and credits, and in this state can deduct the same from credits, if the law is valid.   Our law and our constitution came to us

from Ohio, the law meaning, as construed in *Exchange Bank v. Hines,* 3 Ohio St. 1, decided in 1853, that such part of the law as seems to allow deduction for debts is unconstitutional and void. Under the former, exemption of certain property is permissible, whilst under ours they may be exempted; and the Ohio section provides for taxing by a uniform rule, whilst our section establishes the rule "a uniform and equal rate of assessment and taxation." The two constitutions and the two acts being the same, the same conclusion should be reached by the court, unless the reasoning of the supreme court of Ohio is unsound. We contend that the opinions in support of the decision of the court are consonant with the law and reason, and that they further show that public policy demands just such conclusions as that court reached.

From what we have said we conclude, first, the provision allowing deduction for debts is unconstitutional. Second, if the provision is not void, the constitution inhibits the allowance of the same to banks and bankers. Third, that if the banks or bankers are entitled to deduction for debts, the deduction must be from credits only, and these do not include the true value of bank shares. And, upon the third conclusion, we cite *Lappin v. Comm'rs of Nemaha Co.,* 6 Kas. 411; *Life Association v. Hill,* 51 id. 636; *McConn v. Roberts,* 25 Iowa, 152.

*Caldwell & Ellis,* for defendant in error:

The question in this case is as to the right of a holder of national-bank shares to deduct from their value, when assessed, debts owing by him in good faith, and of the class allowed by statute to be deducted from the gross amount of credits owned by the taxpayer.

The district court held that the stockholder had this right, but plaintiff in error contends that he has not; first, because neither the laws of the state nor of the United States authorize it; and, second, because the statute of the state allowing debts to be deducted from credits is unconstitutional and void. The defendant in error contends, first, that the statu-

tory definition of the term "credit" is broad enough to include such shares; and, second, that § 5219, U. S. Revised Statutes, requires that such deductions be allowed, because the statutes of Kansas, and the taxing officers of the state universally, allow other taxpayers to deduct their debts from the assessed value of a class of credits which constitute a material portion of the other moneyel capital of the state in the hands of its citizens; and to deny to the owners of national-bank stock the right to deduct their debts from the assessed value of such stock is an invalid discrimination.

The statute says that "debts owing in good faith by any person, company or corporation may be deducted from the gross amount of credits belonging to such person, company, or corporation," provided such debts do not belong to the few excepted classes therein named. There is no exception as to who may have this right, and this provision follows immediately after the one that requires merchants and manufacturers to list their stock as one item, and their moneys and credits as another. We are then at liberty to conclude that the statutory definition of "credit" means nothing less than the plain, ordinary construction of its language would imply; that it will include every demand for money, labor, or other valuable thing, not secured by lien on real estate, whether evidenced by judgment, note, bond, bill, or otherwise; that it will include notes, bills and accounts for goods, wares and merchandise between jobbers and retailers, and between retail merchants and their customers; between manufacturers and dealers, for goods sold, as well as between manufacturers and those who supply them with raw materials; and that it will include demands between private banks, bankers and brokers with each other, and between them and their customers. More than this: The definition is broad enough to include stocks in national banks. The stock constitutes an obligation of the bank to the shareholder, a debt which would be due to the shareholder if the business of the bank should be wound up and its assets distributed. It is a right which the stockholder has, to have the money which he paid to the corporation, and

which is represented by his shares of stock, returned to him when the term of the corporation expires. It is a demand for money to become due at some future time, and not secured by a lien on real estate. It is treated as a debt by the bank and by the federal courts. The supreme court of Iowa, in *National Bank v. City of Albia*, 52 N. W. Rep. 334, under a statutory definition of the term "credit" very similar to our own, says: "We are clear that the logical result of the reasoning in the Equitable Life case above referred to leads to the conclusion that the stock held in the bank by D. Lockman and J. H. Drake, respectively, was a 'credit,' and they should be permitted to deduct their respective indebtedness therefrom."

But if shares of stock are not embraced within the statutory definition of credits, and the owner given the right to deduct his debts therefrom by the very terms of our tax laws, yet the act of congress, § 5219, U. S. Rev. Stat., requires that he be allowed to do so because the owners of other moneyed capital in the state are allowed to deduct debts from such moneyed capital. From this proposition we think there is no escape, as it has been settled by the decisions of the federal courts and numerous others. *People v. Weaver*, 100 U. S. 539; *Board of Supervisors v. Stanley*, 105 id. 305; *Hills v. Bank*, 105 id. 319; *Evansville Bank v. Britton*, 105 id. 323.

In *Boyer v. Boyer*, 113 U. S. 689, Mr. Justice Harlan reviews all previous decisions of the court, and says:

"These decisions show that in whatever form the question has arisen this court has steadily kept in view the intention of congress not to permit any substantial discrimination in favor of moneyed capital in the hands of individual citizens, as against capital invested in the shares of national banks."

He then deduces from such decisions this rule:

"That a state law which permits individual citizens to deduct their just debts from the valuation of their personal property of every kind other than national-bank shares, or which permits the taxpayer to deduct from the sum of his credits money at interest or other demands to the extent of his *bona*

29—53 KAS.

*fide* indebtedness, leaving the remainder to be taxed, while it denies the same right of deduction from the cash value of bank shares, operates to tax the latter at a greater rate than other moneyed capital."

The rule thus laid down has been followed by numerous later decisions of the federal and state courts. *Mercantile National Bank v. City of New York,* 121 U. S. 152; *Whitbeck v. Mercantile National Bank,* 127 id. 193; *Miller v. Heilbron,* 58 Cal. 133; *McAden v. Commissioners,* 97 N. C. 355; *Bressler v. Wayne County,* 25 Neb. 468; *Wasson v. National Bank,* 107 Ind. 206; *National Bank v. City of Albia,* 52 N. W. Rep. (Iowa,) 334; *Ruggles v. City of Fond du Lac,* 10 N. W. Rep. (Wis.) 565; *Peavey v. Town of Greenfield,* 9 Atl. Rep. (N. H.) 722; *People, ex rel., v. Ryan,* 88 N. Y. 142.

But it is contended by plaintiff in error that, if the credits from which debts may be deducted under our statute constitute a material part of the moneyed capital of the state in the hands of its citizens, such statute is in conflict with §§ 1 and 2 of the constitution, and invalid. Now, does it make any difference in this particular case whether that part of our tax law is valid or invalid? It has been considered by the taxing officers of the state to be valid, and under it individual citizens of the state have everywhere been allowed to deduct their just debts from credits. This is a matter of common knowledge, of which the courts will take judicial notice. Now, as these deductions were allowed to the other citizens of the state, whether by virtue of a valid law or otherwise, to refuse it to these stockholders is a discrimination forbidden by the act of congress. We have a law which requires all property to be assessed at its actual value. Suppose national-bank stock should be assessed at its full actual value, while all other property in the state is assessed at but one-third or one-fourth of its actual value: Would that not be a discrimination, under the act of congress? Would it be any excuse to say that there was no statute that authorized such discrimination, and that the law of the state requires all property to be assessed at its full value? If the taxing officers make the actual discrim-

ination where there is no statute to give color to their acts, is the stockholder without remedy? The contrary is fairly held and stated in *Pelton v. Bank*, 101 U. S. 143, and *Cummings v. National Bank*, 101 id. 153.

But there can be no doubt but that the statute is valid. The provision of our constitution is wholly unlike that of Ohio, and the decision in *Exchange Bank v. Hines*, 3 Ohio St. 1, can have no application. That decision, even in Ohio, is practically disregarded. See *Whitbeck v. Bank*, 127 U. S. 193; also *Mercantile National Bank v. Shields*, recently decided by the United States circuit court for northern district of Ohio. But were it the highest authority, it does not apply to the constitution of Kansas. That question has already been settled in this state. *Comm'rs of Ottawa Co. v. Nelson*, 19 Kas. 237; *Francis v. A. T. & S. F. Rld. Co.*, 19 id. 303.

We think that the cases of *National Bank v. Fisher*, 45 Kas. 726; *Coal Co. v. Emlen*, 44 id. 117; and *Gibbins v. Adamson*, 44 id. 203, settle any question raised in this case, without going out of the state in search of authority.

The opinion of the court was delivered by

ALLEN, J.: The principal question in this case is as to the right of the holder of stock in a national bank to deduct his indebtedness from the value of the stock, where he has no other credits from which such deduction can be made. In support of this contention two claims are made: (1) That the term "credit," as defined in ¶ 6847, includes stock in a national bank; (2) that § 5219 of the Revised Statutes of the United States prohibits taxation of national-bank shares at a greater rate than other moneyed capital in the hands of the individual citizens of the state, and that, as individual citizens are allowed to deduct their debts from their credits of a certain class, like deductions must be allowed holders of national-bank stock. We will consider these questions in the order stated.

I. The statutory definition of the word "credit," as given

in ¶ 6847, is as follows: "The term 'credit,' when used in this act, shall mean and include every demand for money, labor, or other valuable thing, whether due or to become due, but not secured by lien on real estate." The clause under which exemption is claimed, being the last part of ¶ 6851, reads as follows:

"Debts owing in good faith by any person, company or corporation may be deducted from the gross amount of credits belonging to such person, company, or corporation, provided such debts are not owing to any person, company or corporation, as depositors in any bank, or banking association, or with any person or firm engaged in the business of banking in this state or elsewhere, and the person, company or corporation making out the statement of personal property to be given to the assessor, claiming deductions herein provided for, shall set forth both the amount and nature of his debts sought to be deducted, but no person, company or corporation shall be entitled to any deduction on account of any bond, note or obligation given to any mutual insurance company, or deferred payment or loan for a policy of life insurance, nor on account of any unpaid subscription to any religious, literary, scientific or benevolent institution or society: *Provided*, That in deducting debts from credits, no debt shall be deducted where said debt was created by a loan on government bonds or other nontaxable securities."

Paragraph 6846 provides "That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act." By the various articles in chapter 107, on "Taxation," provision is made for the assessment and taxation of the various classes of property. Article 6, as amended by chapter 84 of the Laws of 1891, provides for the assessment of stock in banks and other corporations. No hint is contained in any part of this article that such stock is to be treated as a credit in the hands of the stockholder. Only the net value of the shares is required to be returned. Banking and other corporations are allowed, in determining the value of their shares, to deduct all indebtedness, all liabilities of every kind and character, not only from their credits, but from their

assets of every description. The value of these shares is made up by summing up all real and personal property, moneys, credits, stocks in other companies and effects of every character and description, and deducting therefrom lands which are specifically taxed, and all debts, obligations, and liabilities, no matter how secured or of what kind. The net value of a share is only the amount that can be realized from the property of the company after its obligations are paid. It is true that, in making the assessment, neither the assessor, nor the bank nor the stockholder is required to go through the process of determining the value of the stock in this manner, but it is fixed at its true value, which can, of course, only be determined from the amount of its assets and liabilities. It is apparent that the holders of stock in banks and other corporations have a material advantage over private individuals, in that they are, in effect, allowed to deduct from the value of all their assets, real property alone excepted, all their indebtedness of every kind and character. In this respect, moneys invested through the medium of corporations have a very great advantage over that invested by individuals in personal property. Money and all credits secured by liens on real estate are also taxable under the statute in the hands of individuals, without deduction. In respect to such property, there is discrimination in favor of banks and other corporate capital. Merchants and manufacturers, by the terms of article 5, are required to return for taxation the average value of merchandise held by them. It matters not whether the owner is indebted for any or all of such stock, taxes must be paid on it without deduction.

The statutory definition of the word "credit" must be construed in the light of all of the provisions of the statute on the subject of taxation. It is by no means clear that stock in a corporation is a demand for money, labor, or other valuable thing, either present or future. The stockholder has no right to demand from the corporation any sum whatever, or any valuable thing whatever. If the concern is prosperous, and the board of directors so determine, he may be entitled

to receive dividends, but he may not demand them until they are declared. On a general winding up of the business of a corporation, he may be entitled to receive more or less than the face value of the shares, but he has no right to demand any part of it so long as the corporation is prosecuting its business under its charter. If the venture proves disastrous, he may be forced to pay losses rather than to receive profits. We think that shares of stock are rather certificates of an interest in an enterprise, and in the property, of every description, subject to the liabilities of the corporation, rather than a demand for anything. It is a strained construction of the word "credit," or of the word "demand," to hold it to include stocks in a corporation. The decisions to which our attention is called which seem to give countenance to such a definition as is contended for by the bank we think are to be viewed rather as applications of the substantial requirements of the United States statute than as affording a definition of the word "credit" as used in the laws of this state. But, if the construction of the statutory definition of the word "credit" contended for by the defendant in error is correct, the question arises whether the legislature had the power to grant banking corporations such favors. Section 2 of article 11 of the constitution is as follows:

"The legislature shall provide for taxing the notes and bills discounted or purchased, moneys loaned, and other property, effects, or dues of every description, (without deduction) of all banks now existing, or hereafter to be created, and of all bankers; so that all property employed in banking shall always bear a burden of taxation equal to that imposed upon the property of individuals."

In providing for the taxation of banks, the legislature seems to have always disregarded this provision of the constitution, which requires that the value of all property and of all credits of every description held by banks shall be taxed without deduction. The legislature provides only for taxing the net worth of the bank, thereby greatly reducing the amount of property to be taxed. If this provision of the

constitution had been followed by the legislature, there would be ample ground for contending that the banking capital was discriminated against; yet, as the fundamental law of the land so requires, there could be no question as to the validity of laws framed in accordance with the provisions of the section of the constitution quoted, so far as it affected corporations created under the laws of this state. A question, however, would arise under the act of congress referred to, as to whether the taxation of shares in national banks was at a higher rate than that on moneyed capital in the hands of individuals. We conclude, therefore, that the word "credit," as used and defined in the chapter of the general statutes on the subject of taxation, does not include shares of stock in banking and other corporations.

1. Taxation of national-bank stock.

II. Section 5219 of the Revised Statutes of the United States provides:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located, but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes to the same extent, according to its value, as other real property is taxed."

The claim made in this case, and the others argued and submitted at the same time with it, of a right to deduct individual indebtedness from the value of national-bank stock, by the owner, is a novel one. So far as our knowledge extends, such right has never before been claimed, but the shares of stock

in national and state banks have always been taxed without such deductions. Counsel have industriously presented the decisions, not only of the supreme court of the United States bearing on the question, but those by the courts of last resort in sister states. As this is a question of the construction of an act of congress, the decisions of the supreme court of the United States are controlling, and it becomes our duty to carefully examine the construction given to the section under consideration by that tribunal. In the case of *Hepburn v. School Directors*, 23 Wall. 480, it was held that shares in national banks may be valued for taxation for county, school, municipal and local purposes, at an amount above their par values, and that such shares are not exempt from taxation, although, by the statute of Pennsylvania, "All mortgages, judgments, recognizances and moneys owing upon articles of agreement for the sale of real estate are made exempt from taxation in that county, except for state purposes." And in the opinion in that case the court says: "It could not have been the intention of congress to exempt bank shares from taxation because some moneyed capital was exempt." In *Adams v. Nashville*, 95 U. S. 19, it was held that "The act of congress approved June 3, 1864, was not intended to curtail the power of the states on the subject of taxation, or to prohibit the exemption of particular kinds of property, but to protect the corporations formed under its authority from unfriendly discrimination by the states in the exercise of their taxing power." Under the laws of New York, taxpayers had the right to deduct their just debts from the value of personal property owned by them, and the balance only was subject to taxation. The legislature in 1866 provided for taxing shares in state and national banks, subject only to a deduction of the value of the real estate held by the bank, which also was subject to taxation directly.

In the case of *People v. Weaver*, 100 U. S. 539, it was held that this operated as a discrimination against the banks, and imposed taxation on banking capital at a greater rate than on other moneyed capital. It is easy to perceive that the laws

in that state made a very substantial discrimination against
capital invested in banking; and the court held that the sec-
tion under consideration includes the valuation of the shares
as well as the rate of percentage charged thereon.   In *Super-*
*visors v. Stanley*, 105 U. S. 305, the court again had this same
statute under consideration, and it was held that, so far as the
laws of New York discriminated against the holders of shares
in national banks, by refusing to them a deduction from the
value of their stock equal to the amount of their indebtedness,
while such deduction was allowed to the individual owners
of all kinds of other personal property, it was in conflict with
the act of congress and void to that extent, but that the stat-
ute was valid except so far as it refused to the owners of na-
tional-bank stock the right to deduct their debts from its
valuation.   The case of *Evansville Bank v. Britton*, 105 U. S.
323, goes one step further.   Mr. Justice Miller, in delivering
the opinion, among other things, says:

"A distinction is attempted to be drawn between the In-
diana statute and the New York statute, because the former
permitted the deduction of the taxpayer's indebtedness to be
made from the valuation of his personal property, while in In-
diana he can only deduct it from his credits, and undoubtedly
there is such a difference in the laws of the two states; but
if one of them is more directly in conflict with the act of
congress than the other, it is the Indiana statute.   In its
schedule, the subject of taxation from which the taxpayer
may deduct his *bona fide* indebtedness is placed under two
heads, as follows: '1. Credits or money at interest, either
within or without the state, at par value.  2. All other demands
against persons, or bodies corporate, either within or without
this state.   Total amount of all credits.'   The act of con-
gress does not make the tax on personal property the measure
of the tax on bank shares in the state, but the tax on mon-
eyed capital in the hands of the individual citizens.   Credits,
money loaned at interest and demands against persons or
corporations are more purely representative of moneyed cap-
ital than personal property, so far as they can be said to differ.
Undoubtedly there may be much personal property exempt
from taxation without giving bank shares a right to similar
exemption, because personal property is not necessarily mon-

eyed capital; but the rights, credits, demands and money at interest mentioned in the Indiana statute, from which *bona fide* debts may be deducted, all mean moneyed capital invested in that way."

In *Boyer v. Boyer*, 113 U. S. 689, in a case arising under the laws of Pennsylvania, it appeared that

"The laws of Pennsylvania exempted from local taxation for county purposes railroad securities, shares of stock held by stockholders in corporations which were liable to pay certain taxes to the state, mortgages, judgments, recognizances, moneys due on contracts for sale of real estate, and loans by corporations which were taxable for state purposes when the state tax should be paid. The pleadings in this case admitted in detail large amounts of exempted property under these heads in the state. Held that, under these circumstances, this constituted a discrimination in favor of other moneyed capital against capital invested in shares in national banks, which was inconsistent with the provision in § 5219, Revised Statutes, that the taxation by state authority of national-bank shares shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

In the opinion in that case, it is again said that a partial exemption would not take away the power to tax bank shares, but much stress is laid on the fact that the exemption covered a very large part of the moneyed capital of the state.

In the case of *Mercantile National Bank v. City of New York*, 121 U. S. 138, it was held that the facts that, under the laws of the state of New York, trust companies and savings banks were taxed in a different manner from national banks, and that deposits in savings banks were exempted from state taxation, and that bonds of the city of New York were also exempt, were not sufficient to show a substantial discrimination against national banks. The court in this case reviewed the previous decisions at some length, and adhered to the general proposition enunciated in the former cases, that, in order to invalidate the tax, there must be a substantial discrimination against national-banking capital.

The case of *Whitbeck v. Mercantile Bank*, 127 U. S. 193,

arose under the laws of the state of Ohio. It appeared that the statute of that state allowed an owner of moneyed capital, other than shares in a national bank, to have a reduction equal to his *bona fide* indebtedness made from the amount of the assessments of such moneyed capital, but made no such allowance on the value of shares in a national bank. It was held that owners of bank stock were entitled to the same deduction of the amount of their indebtedness as in the case of other moneyed capital.

It appears to us that the principle declared and maintained in all of the cases decided by the United States supreme court is, that there must not be a substantial discrimination against capital invested in national banks; that the question of minor exemptions is a matter of state policy, with which that court will not interfere, and that, when only some minor and inconsiderable portions of capital are relieved from the burden of taxation, the validity of taxes levied on national banks will not be thereby affected.

The supreme court of the state of Indiana, in the very elaborate and well-considered opinion in the case of *Wasson v. National Bank*, 8 N. E. Rep. 97, review the decisions on the question, and take judicial notice of the fact that the other forms of moneyed capital, from which debts may be deducted, constitute a large and material portion of the moneyed capital of the state, and conclude that national banks are therefore entitled to a similar reduction. Following the decisions of the supreme court with reference to the same statute, it was said that, in that state, indebtedness could be deducted from the amount of notes, judgments and credits of every description due from any person, company, or corporation, whether drawing interest or not. In this state, the deduction cannot be made from the amount of judgments, or any moneys secured by lien on real estate. Money on deposit subject to demand is also taxable, as well as all corporate stocks.

We have also examined the cases of *McAden v. Commissioners*, 97 N. C. 355; *National Bank v. City Council*, 52 N. W. Rep. (Iowa) 334; *Miller v. Heilbron*, 58 Cal. 133; *Rug-*

*gles v. Fond du Lac,* 10 N. W. Rep. (Wis.) 565; *Peavey v. Greenfield,* 9 Atl. Rep. (N. H.) 722. None of these cases goes to the length it would be necessary to reach in order to affirm the judgment of the district court. That of *Miller v. Heilbron,* supra, seems to reach the furthest limit of any. The political code of California provided that, "in assessing a solvent debt, not secured by mortgage or trust deed, a reduction therefrom shall be made of debts due a *bona fide* resident of the state." It will be seen that in California the only exception is debt secured by mortgage or trust deed. On the other hand, the case of *Bressler v. County of Wayne,* 32 Neb. 834, decided and reported first in 25 Neb. 468, and finally disposed of on a rehearing, holds that the statute of that state, which allows all persons, companies, or corporations, except banks, to deduct the amount of their debts from the gross amount of their credits, is valid, and that, under their statute, persons owning stock in national banks cannot deduct their indebtedness from the value of their shares. That case takes more extreme ground than we are required to take in this in order to deny the stockholders the right claimed.

The credits referred to in our statute are but one of many kinds of moneyed capital, if, indeed, they can be regarded as capital at all. It would seem to have been the view of the legislature that only those unsecured credits which were not in general investments for profit, but would in the ordinary course of honest dealing be applied, as soon as received, to the extinguishment of current debts and obligations, should be subject to the deduction, and that in fact such credits represented no capital whatever where there was a corresponding debt, to the payment of which they of right should be devoted. We cannot, in this case, take judicial notice of the fact that such credits constitute a large or even material part of the moneyed capital of the state. On the contrary, we do take judicial notice of the fact that debts secured by liens on real estate, money invested in corporate stocks of all kinds

and descriptions, including railroad, banking, insurance, loan and trust companies, and all the multifarious forms of moneyed securities, moneys on deposit subject to call, and other forms of invested capital, constitute the great bulk of the moneyed capital in this state.

The case of *National Bank v. Fisher*, 45 Kas. 726, is cited on the part of the bank as decisive of this case. That case, however, merely decides that the assessment of the stock, *in solido*, against the bank itself, is invalid, and that the individual stockholders are entitled to the same deductions from the assessment upon their shares as other taxpayers owning moneyed capital are allowed. We are entirely satisfied with the opinion in that case, but it does not reach the question here presented. Upon this branch of the inquiry, we conclude that § 5219 of the Revised Statutes of the United States is not violated, and that neither owners of stock in national banks nor any other banks, or corporations of any kind, have the right to deduct their indebtedness from the valuation of their shares of stock.

2. Debts, owing in good faith —deduction— valid statute.

Two minor questions are presented in the case. It appears that 40 shares of the stock were held by the bank, and that these were assessed to the bank. In the absence of any showing that, in ascertaining the value of a share of stock in the bank, the full thousand shares were considered as outstanding, we think this assessment wrong. The owners of the remaining $96,000 of capital stock would be entitled to all the property of the company, and the 40 shares held by the bank would simply amount to just as much as a liability as they would as an asset. The cases of *Coal Co. v. Emlen*, 44 Kas. 117, and *Gibbins v. Adamson*, 44 id. 203, are cited in support of the proposition that the assessor had no right to change the assessment after it was made and returned, and that the board of equalization had no power to add to the amount of taxable property returned by the assessor. In reply to that, we may say that this is an action of injunction,

in which the bank appears as plaintiff; and it
<span class="margin-note">3. Injunction, not maintained.</span> can only be maintained for the purpose of re-
straining an illegal tax, no matter what the ir-
regularity in the mode of assessment may have been.   We
are not prepared to say that the board of equalization had no
power to strike out the deduction of debts claimed by the
stockholders, but to which we have held they are not enti-
tled.   With reference to the "double assessment," there are
no averments in the petition from which it can be inferred
that this property had not escaped taxation for the year 1892,
while in the hands of the same parties.   If it had so escaped,
the double assessment was right, and the collection of the tax,
even though about to be irregularly placed on the tax roll, will
not be enjoined.

The judgment is reversed, and the cause remanded for fur-
ther proceedings in accordance with the views above expressed.

All the Justices concurring.