THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS v. HANNAH LANE.

No. 14,939. (90 Pac. 1092.)

SYLLABUS BY THE COURT.

1. TAXATION—*Correction of Assessor's Returns—Authority of County Clerk.* The power given to the county clerk by section 1669 of the General Statutes of 1901 to assess personal property overlooked by the assessor is no more extensive than that granted by section 7599, which authorizes the county clerk or board of commissioners, upon notice to the property owner, to correct the assessor's returns at any time before the final settlement with the county treasurer.

2. ——— *Property Wrongfully Omitted from Tax-rolls of Previous Years.* In view of the fact that the statute provides in express terms that where real estate has escaped taxation in any former year the amount so avoided shall be added to the tax of the current year, while no similar provision is made in the case of personal property, section 7599 cannot be regarded as affording means for collecting the amount of taxes that ought to have been but were not imposed in previous years, but must be construed as intended merely to authorize the county clerk or board of commissioners to add to the tax-roll of the current year personal property improperly omitted therefrom.

Douglas County v. Lane.

3. ——— *Void Proceeding to Tax Personalty Improperly Omit-
ted in Former Years.*  Where under color of sections 1669
and 7599 the county clerk and board of commissioners at-
tempt to charge a person with the amount of tax which
ought to have been but was not assessed against him in a
former year on account of personal property then owned by
him, such proceeding is wholly void.

4. ——— *Recovery of Money Paid under Protest.*  One who, to
avoid the seizure and sale of his property under a tax war-
rant which is void because it is based upon such a proceed-
ing, pays the amount of such charge may recover it in a
proper action, notwithstanding his fault in failing to make a
full statement of his taxable property in the previous year,
and notwithstanding he has never discharged his moral ob-
ligation to contribute in proportion to his means to defray
the public expenses of that year.

Error from Douglas district court; CHARLES A.
SMART, judge.  Opinion filed June 8; 1907.  Affirmed.

*M. A. Gorrill,* and *Thomas Harley,* for plaintiff in
error.

*W. B. Brownell,* and *J. E. Riggs,* for defendant in
error.

The opinion of the court was delivered by

MASON, J.:  Hannah Lane was a resident of Douglas
county from 1898 to 1902.  During that time she was
the owner of certain mortgages which she did not in-
clude in her statements of taxable property made to
the assessor, and upon which she paid no taxes.  On
October 27, 1903, the county clerk, upon notice to her,
undertook to charge her with a tax, on account of
her ownership of such mortgages, for each of the years
1898, 1899, 1900, 1901, and 1902, the amounts being
fixed by estimating the value by the usual methods and
applying the rate for the appropriate year.  A tax
warrant was issued, and to avoid the seizure and sale
of her property Mrs. Lane paid the amount charged
against her, and then brought an action against the
county to recover it.  The case was submitted upon an

agreed statement of facts. Judgment was given for the plaintiff, and the defendant prosecutes error.

Only two questions are presented: (1) Had the clerk statutory authority to impose the tax? (2) If not, was the plaintiff precluded from recovering by the fact that the amount wrongfully taken from her was only what would have been rightfully charged against her if she had in former years made correct returns of her property to the assessor? The authority of the county clerk must be found, if at all, in section 1669 or section 7599 of the General Statutes of 1901, reading respectively as follow:

"It shall be the duty of the county clerk to assess, at a fair value, the property of any person liable to pay taxes which the county assessor has failed to assess, and to place the same on the tax-roll, and the county treasurer shall collect the taxes on the same as in other cases; and it shall further be the duty of the county treasurer to notify the county clerk of any such property which may come to his knowledge, and the county clerk, for the purpose of assessing the same, is authorized to administer oaths to the owner of such property, or to any other person, touching the value of the same; but the county clerk is not required to see such property in person."

"The county clerk, or board of county commissioners, if he or they shall have reason to believe that any person, company or corporation has given to the assessor a false statement or has made no statement whatever of his personal property, money, credits, investments in bonds, stocks, joint-stock companies, corporations or otherwise, and that the assessor has not returned the full amount required to be listed in his city or township, or has omitted any personal property, moneys, credits, investments in bonds, stocks, joint-stock companies, corporations or otherwise, or has undervalued the same, which are by law subject to taxation, shall proceed *at any time before the final settlement with the county treasurer* to correct the returns of the assessor, and to charge such person, company or corporation on the tax-roll with the proper amount of taxes; to enable him to do which, he is hereby authorized and empowered to issue compulsory

process, and require the attendance of any person or persons whom he may suppose to have a knowledge of the value of such articles of personal property, moneys, credits, investments in bonds, stocks, joint-stock companies, corporations or otherwise, and examine such person or persons on oath or affirmation in relation to the statement or returns. And it shall be the duty of the said clerk in all such cases to give at least five days' notice to such person, company or corporation by the sheriff leaving a copy of the notice with the person, if he resides in the county; and if the person does not reside in the county, then by putting a copy of said notice in the post-office, properly directed to said person, and, if a company or corporation, by leaving a copy of the notice at the nearest and usual place of business of said company or corporation, before entering the said increased valuation on the tax-roll, that the said person, company or corporation may have an opportunity of showing that the statement or return to the assessor was correct. And if any person who may be summoned to appear before the clerk for examination as provided in this section shall wilfully fail to appear, or, appearing, shall refuse to answer any question or questions propounded to him concerning the subject of such examination, such person shall be deemed guilty of a misdemeanor, and upon conviction thereof before a court of competent jurisdiction shall be fined in a sum not exceeding fifty dollars, and by imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment. And the county clerk shall in all such cases file in his office a statement of the facts or evidence on which he made the correction, but he shall in no case reduce the amount returned by the assessor."

The plaintiff claims that section 1669 is obsolete, and that by reason of the words here italicized no action can be taken under section 7599 after the final settlement with the treasurer, which takes place at the October meeting of the board of county commissioners. (Gen. Stat. 1901, § 1684.) The defendant contends that the time limitation is not mandatory and does not prevent subsequent additions to the personal-property tax-roll; also, that section 1669 is still in force and by its very terms authorizes such additions to be made at

any time. While the two sections quoted seem to cover essentially the same subject-matter, their history does not indicate that one was intended as a substitute for the other. Section 7599 is really the older, for it is substantially the same as section 49 of chapter 118 of the Laws of 1866, while section 1669 first appeared in 1868, and both were retained in the revision of that year. (Gen. Stat. 1868, ch. 25, § 53, and ch. 107, § 65.) However, section 7599 in its present form was enacted in 1876, when the entire chapter relating to taxation was revised; and the fact that section 1669 still retains a reference to the county assessorship, an office which was abolished in 1869, gives plausibility to the view that it is no longer in effect. But whether or not section 1669 is to be regarded as repealed by implication and superseded by section 7599, we do not regard it as conferring upon the clerk any more extensive power than that granted by the latter section. If both sections are in force they must be construed together. It cannot be thought that the power given by section 7599 to the clerk and to the county board, with limitations as to the time and manner of its exercise, is intended to be by section 1669 conferred upon the clerk alone, freed from all restrictions. No requirement for a notice to the property owner is mentioned in section 1669. Rather than suppose that the legislature meant to dispense with such a notice, or to leave the necessity for it to be established by inference and its character to be determined by the officers giving it, we conclude that the provisions of section 7599 in this regard were intended to apply to all cases where additions are sought to be made to the returns of the assessor. And as we must look to that section for a part of the procedure, it is natural to consider all the restrictions there found, including that as to time, to have the same universal application.

But, as already indicated, the further contention is made on behalf of the county that even under section

7599 the lapse of time is not material—that the provision that any changes in the assessor's returns shall be made before the final settlement with the treasurer is directory only.  It is true that ordinarily an official act is not required to be performed at the very time designated by a statute.  Except as substantial rights are affected its performance at a later date is equally effective.  But here the real question is not as to the consequence of action being taken on a day other than that named, but as to the general policy of the legislature with respect to personal property that has escaped taxation in former years.  Two theories, and but two, are open for consideration.  Either the limitation referred to is absolute and personal property not returned by the assessor can be reached for taxation only by adding it to the tax-roll of the current year before a final settlement is had with the treasurer with respect thereto, or there is no limitation whatever and taxes may be imposed at any time on account of personal property for which the owner has failed to make a due accounting—in substance, if not in form, such property may be placed upon the tax-roll of any subsequent year.  To determine the actual legislative purpose it is important to consider other provisions of the tax laws.  In the case of real estate it is expressly provided that lands that have escaped taxation "for any former year or years" shall be charged with the amount thereof on the tax-roll.  (Gen. Stat. 1901, §§ 7579, 7580.)  The omission from the sections quoted of all reference to the taxes of former years points unmistakably to an intention to pursue a different method in the case of personal property.  This inference is strengthened by the fact that personalty is required to be assessed at double its real value if it is found to have escaped taxation for the last preceding year, while no such penalty is imposed if it has been omitted from any earlier tax-roll.  From these various provisions we conclude that the framers of the tax law

2—76 KAN.

had under consideration the matter of the escape of property from taxation in former years, and for reasons of the sufficiency of which they were the sole judges ·saw fit to place a time limit upon the effort to correct such omissions in the case of personal property, but not in the case of real estate. It results from this view that the tax charged against the plaintiff in 1903 on account of property which she owned but did not pay taxes upon in 1899 and the intervening years was wholly void.

It remains to decide whether other considerations prevent the plaintiff's recovery. An action for the recovery of the amount of an illegal tax involuntarily paid is governed by the same rule as a suit to enjoin its collection where the remedy by injunction is open. The usual statement is that the action may be maintained if the tax is void, but not if it is merely irregular. (2 Cooley, Taxation, 1487-1489; 27 A. & E. Encycl. of L. 757-759.) In a line of Wisconsin cases, of which *Day and another v. Town of Pelican*, 94 Wis. 503, 69 N. W. 368, is typical, a further requirement is insisted upon. It was there said:

"It is not enough to show that the tax proceedings are irregular or void, but it must also appear that they are inequitable. Proof of illegal and void additions to the assessment, which increased the taxes of the party bringing the action, may show a *prima facie* case, but the defendant is entitled, at least, to rebut it, and to show, by way of vindicating the tax in equity and justifying the retention of the money sued for, that, had the party made a fair and truthful return of his property, he would have been properly taxed for the entire amount or a material part of the alleged illegal tax. The plaintiff in such action cannot be allowed to take advantage of his own neglect or breach of duty under the law, so as to recover out of the treasury money he has paid into it under protest, and which it was in fact his duty, in equity and good conscience, to have thus paid in the first instance." (Page 509.)

This decision was rendered under a statute which in

terms forbade a recovery of money paid as taxes "unless it be made to appear to the court that the plaintiff has paid more than his equitable share of such taxes," but the same rule had already been applied in injunction cases as one resulting from the application of equitable principles. (*Hixon and others v. Oneida County and another,* 82 Wis. 515, 531, 52 N. W. 445, and cases there cited.)

In Kansas injunctions have frequently been allowed where additions have been made to the assessor's returns without notice to the persons affected, apparently without inquiry into the justice of the additions. (*Water Supply Co. v. Roberts,* 45 Kan. 363, 25 Pac. 855, and cases cited; *Coal Co. v. Emlen,* 44 Kan. 117, 24 Pac. 340.) The rule of the Wisconsin court certainly has much to commend it, but even if adopted here it would fail to reach the facts of the present case. Where a property owner fails to make a full disclosure to the assessor, and the public officials without notice to him add the omitted items to the assessment roll of that year, although the resulting tax is void it may with reason be said that he ought not to be permitted on that account to enjoin its collection or to recover it after an involuntary payment, because notwithstanding the jurisdictional defect the thing actually accomplished is what the law intended —all the property placed upon the roll belongs there, but it gets there by a wrong method. A very different situation is presented where charges are made on account of the failure to make a correct return in some previous year. The law, as here interpreted, does not contemplate that such charges shall get upon the tax-roll of the current year by any method. To place them there, and by this means to enforce their payment, is in a sense inequitable; it results in an unequal imposition of taxes for that year. That the person aggrieved thereby has at some time in the past been guilty of a wrong toward the public does not change the aspect of the case in this regard, since the wrong

is one which the statute in effect condones by neglecting to provide any means by which it may be rectified. The moral obligation to make restitution is not one of which the courts can take notice.

No estoppel to maintain the present action arises out of the circumstance that the plaintiff has heretofore made untrue statements by means of which she in former years avoided bearing her fair share of the public expense. Her action is not founded on that conduct. She is not now seeking to derive an advantage from that wrong. That she is enabled to retain the advantage she has already derived from it results from the statute. Her prior delinquency does not impose upon her a disability to invoke the protection of the law against illegal exactions made of her at this time.

The judgment is affirmed.